J-A19006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KEB HANA BANK USA, NATIONAL ASSOCIATION, F/K/A BNB HANA BANK, NATIONAL ASSOCIATION, F/K/A BNB BANK NATIONAL ASSOCIATION | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 207 EDA 2020 |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, SUCCESSOR IN INTEREST TO LAWYERS TITLE INSURANCE CORPORATION | : : : : : | |
| Appellant | : | |

Appeal from the Order Entered December 9, 2019
In the Court of Common Pleas of Monroe County
Civil Division at No(s):  No. 7113-CV-2019

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED SEPTEMBER 29, 2020**

Fidelity National Title Insurance Company ("Fidelity") (defendant below), appeals from the trial court's December 9, 2019 order, entered in the Court of Common Pleas of Monroe County, sustaining in part and denying in part its preliminary objection in the nature of a motion to compel arbitration.[1] On appeal, Fidelity contends the trial court erred in failing to compel

_____

[*] Retired Senior Judge assigned to the Superior Court.
[1] An order denying a motion to compel arbitration is immediately appealable. **See** 42 Pa. C.S.A. § 7320(a)(1); Pa.R.A.P. 311(a)(8).

arbitration of Appellee's, KEB Hanna Bank USA (KEB) (plaintiff below), bad faith claim. After careful review, we affirm.

Because we write primarily for the parties and because of the nature of the issues raised in this matter, we need not provide a detailed summary of the facts underlying this case. We briefly note, on September 11, 2019, KEB filed a complaint against Fidelity. The complaint arose out of Fidelity's policy insuring title to which KEB had a mortgage interest. *See* Complaint, 9/11/19, at 1-6. KEB claimed that due to Fidelity's numerous errors, KEB's "insured first lien priority [m]ortgage had been compromised." *Id.* at 4.

KEB's complaint included two counts, the first for breach of contract and the second for bad faith in violation of 42 Pa.C.S.A. § 8371.[2] *Id.* at 6-8. Count II of the complaint states, in pertinent part:

> 28. [KEB] has suffered a covered loss pursuant to the terms of the [t]itle [p]olicy.

---

[2] Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

29. As of the date hereof, [Fidelity] has neither denied nor accepted [KEB's] claims.

30. [Fidelity] has no reasonable basis for denial of [KEB's] claims.

31. [Fidelity] has delayed, obstructed and frustrated the processing of [KEB's] claims.

32. As a result thereof, [KEB] has incurred unnecessary costs and expenses and has further been delayed in enforcement of its rights and remedies under its [m]ortgage. Moreover, [KEB] has been compelled to institute the above-captioned litigation in order to enforce its just and valid claims under the [t]itle [p]olicy.

33. [Fidelity's] actions and omissions constitute bad faith under Pennsylvania law.

*Id.* at 7-8.

Fidelity responded a month later by filing preliminary objections seeking to compel arbitration. It contended paragraph 13 of the title insurance policy contained an arbitration clause. Preliminary Objections, 10/11/19, at 4. This clause reads in pertinent part:

Either [Fidelity] or the insured may demand that the claim or controversy shall be submitted to arbitration . . . Arbitrable matters may include but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service in connection with its insurance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy.

All arbitrable matters when the [a]mount of [i]nsurance is $2,000,000 or less shall be arbitrated at the option of either [Fidelity] or the insured.

*Id.* at Exhibit 1 D, Conditions § 13.

The trial court subsequently overruled the preliminary objections in part and granted them in part. It sustained the preliminary objections as to the

breach of contract claim but denied them as to the statutory bad faith claim, stating:

> The bad faith claim is separate and apart from the breach of contract issue. A bad faith claim pursuant to 42 Pa.C.S.A. Section 8371 cannot be heard by an arbitration panel and must remain in the Court of Common Pleas. **See Nealy v. State Farm Mutual Auto Insurance Co.**, 695 A.2d 79 (Pa. Super. 1997).

Order, 12/09/19, at 2.

The instant, timely appeal followed. The trial court ordered Fidelity to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). Fidelity timely filed its Rule 1925(b) statement on January 23, 2020, and on that same day, the trial court issued a statement declining to write an opinion and instead adopting its December 9, 2019 Order.

In its first issue, Fidelity argues that the title insurance policy contains a valid, enforceable agreement to arbitrate. **See** Fidelity's Brief, at 2, 11-13. However, this issue is not in dispute on appeal. It appears the trial court, because it sustained the preliminary objection as to the breach of contract claim, found there was a valid, enforceable agreement to arbitrate.[3] Fidelity prevailed on this argument in the court below, as the court compelled arbitration on the breach of contract claim. Nor has Fidelity demonstrated that

---

[3] The trial court's decision to rely on its brief December 9, 2019 order rather than writing a proper Rule 1925(b) opinion may have cause some confusion or uncertainty on the part of Fidelity. The order does not contain any findings of fact and provides little explanation of its conclusions of law. **See** Order, 12/09/19, at 1-2.

it was aggrieved by this conclusion. Fidelity therefore lacks standing to raise it on appeal. **See In re J.G.**, 984 A.2d 541, 546 (Pa. Super. 2009). KEB did not file a cross-appeal, and we see nothing which demonstrates it intended to raise the issue of lack of an agreement to arbitrate on appeal. Therefore, we will not further address this issue.

In its second issue and third issues, Fidelity argues that the trial court erred in declining to enforce the arbitration agreement with respect to its bad faith claim. **See** Fidelity's Brief, at 2, 13-26. Specifically, Fidelity contends: (1) the trial court erred in finding the bad faith claim was outside the scope of the arbitration agreement; and (2) it erred in finding this Court's decision in **Nealy** controls this matter. **Id.** We disagree.

We review claims that a court improperly refused to enforce an arbitration clause according to contract interpretation principles:

> We begin by noting that our review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. As contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope is plenary.

**Petersen v. Kindred Healthcare, Inc.**, 155 A.3d 641, 644 (Pa. Super. 2017) (citations omitted).

Pennsylvania law favors settlement of disputes by arbitration. **See Provenzano v. Ohio Valley General Hosp.**, 121 A.3d 1085, 1096 (Pa. Super. 2015). When deciding whether a trial court should have compelled

arbitration, we employ a two-part test: (1) does a valid agreement to arbitrate exist, and (2) is the dispute within the scope of the agreement. *See Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa. Super. 2004). "[I]f a valid arbitration agreement exists between the parties and [the plaintiff's] claim is within the scope of the agreement, the controversy must be submitted to arbitration." *Highmark Inc. v. Hospital Service Ass'n. of Northeastern Pennsylvania*, 785 A.2d 93, 98 (Pa. Super. 2001). "[T]he scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." *Henning v. State Farm Mut. Auto. Ins. Co.*, 795 A.2d 994, 996 (Pa. Super. 2002) (citations and internal quotation marks omitted).

Here, however, we need not address Fidelity's contention the bad faith claim fell within the scope of the arbitration agreement. The record does not demonstrate that the trial court found the claim to be outside the scope of the agreement; rather, it found *Nealy* to be binding. *See* Order, 12/09/19, at 2. *Nealy* arose out of a motor vehicle accident, the Nealys sued their insurance company after it denied coverage under their uninsured/underinsured motor vehicle coverage ("UM/UIM"). *See id.*, 695 A.2d at 790-91. At the request of the Nealys, the trial court severed its claims against the insurance company from its claims against its insurance agent, and the claims against the insurance company proceeded to mandatory arbitration. *See id.* at 791. Initially, the arbitrators agreed they could not hear the Nealys' bad faith claim

pursuant to 42 Pa.C.S.A. § 8371. *See id*. Despite this, the arbitrators ultimately ruled in favor of the insurance company on the bad faith claim. *See id*. The Nealys filed an application to vacate, modify and/or correct the arbitration order in the Court of Common Pleas. *See id*. The trial court denied the application and the Nealys appealed. *See id*.

On appeal, this Court held bad faith claims pursuant to Section 8371, "are distinct from the underlying contractual insurance claims from which the dispute arose." *Id*. at 792. Instead, section 8371 "provide[s] an independent cause of action to an insured that is not [dependent] upon success on the merits, or trial at all, of the contract claim." *Id.* at 793. We went on to hold:

> Both this Court and our sister federal courts have decided a myriad of cases that impinge in some respect upon the workings of § 8371. No court, however, has squarely decided the question of whether an arbitration panel is vested with the jurisdiction to entertain such a claim. After careful consideration, we conclude that **original jurisdiction to decide issues of § 8371 bad faith is vested in our trial courts.**
>
> Our research shows that, as a procedural norm, virtually all § 8371 claims have been commenced in our courts of common pleas without first being submitted to arbitration. Although some of these cases remained in our state courts throughout litigation, a vast majority were removed to federal court upon motion by the defendants, [invoking] federal diversity jurisdiction. Although federal caselaw interpreting and applying Pennsylvania state law is not binding upon this Court, it remains a valuable source of judicial interpretation and should be carefully considered when deciding issues of first impression.
>
> In **Winterberg v. Transportation Insurance Co.**, 72 F.3d 318 (1995), the Court of Appeals for the Third Circuit was called upon to determine the interplay between this state's workman's compensation statute and the bad faith provision embodied in § 8371. After a thorough and comprehensive review of the inner

workings and intent of the worker's compensation scheme, the Court held that referees appointed to hear compensation claims "have no authority to hear actions brought under the 'bad faith' statute" and that "[t]he language of the statute plainly focuses on suits in courts of law based on insurance policies." *Id.* at 324 (emphasis added).

We find *Winterberg* to be both factually similar and legally persuasive. Although involving the jurisdiction of a workman's compensation board and not an arbitration panel, the Court correctly recognized that the jurisdiction granted to these types of non-judicial panels is limited in nature and should not be expanded merely because the events which gave rise to the initial cause of action may or must be initiated in a non-judicial or quasi-judicial forum.

\* \* \* \*

Arbitration panels are designed to ease the burden on our courts by deciding issues of damages and liability as they pertain to the factual dispute that gave rise to the contractual insurance claim. **A § 8371 bad faith claim, however, is initiated based upon behavior of the insurance company occurring subsequent to the negligent or intentional behavior of a third party that spawned the contractual suit. Thus, because the behavior complained of is temporally and factually distinct from any behavior that would impact upon the outcome of the damages and liability disposition of the contract claim, we see no reason to expand upon the panels' jurisdiction.**

We therefore hold that the trial court in the instant matter properly concluded that the arbitration panel did not have jurisdiction to decide the § 8371 bad faith claim and that the arbiters' gratuitous comments to the effect that State Farm did not act in bad faith were merely *dicta*. Just as appellants were contractually required to initially litigate their insurance claims at the arbitration level, they were statutorily required to commence their bad faith claim against their insurer in the court of common pleas.

*Id.* at 793-94 (emphases added, footnotes and some case citations omitted).

Fidelity argues, without citation to pertinent authority, the holding in *Nealy* is limited to UM/UIM cases. *See* Fidelity's Brief, at 20-21. This argument lacks merit. Section 8371 applies to, "action[s] arising under an insurance policy[.]" 42 Pa.C.S.A. § 8371. It does not just apply to UM/UIM actions. *See*, *e.g.*, *Michael v. Stock*, 162 A.3d 465, 480 (Pa. Super. 2017) (applying *Nealy* in to a bad faith claim against a title insurer).

Further, there is nothing in the above-quoted language from *Nealy* which limited its holding to UM/UIM cases. Rather, the *Nealy* court based its decision on the language of section 8371, the types of damages it provided, and the differences between bad faith claims and claims arising under the insurance contracts. *See Nealy*, 695 A.2d at 793-94. Moreover, in reaching its conclusion the *Nealy* court relied upon a case that arose out of a worker's compensation dispute, not a UM/UIM dispute. *See id*. Lastly, if we were to adopt Fidelity's argument, it would result in an untenable situation where UM/UIM bad faith claims would be filed in the Courts of Common Pleas, while other insurance bad faith claims would be subject to arbitration.

Moreover, we find Fidelity's attempts to distinguish *Nealy* unpersuasive. Despite Fidelity's arguments to the contrary, the language of the complaint, quoted above, clearly shows KEB's bad faith claim, like the bad faith claim in *Nealy*, was based upon Fidelity's post-breach conduct and thus is temporally and factually distinct from its breach of contract claim. *See* Complaint, 9/11/19, at 7-8; *Nealy*, 659 A.2d at 794.

Nor are we persuaded by Fidelity's contention **Nealy** is not good law. Some of the cases Fidelity cites to predate **Nealy**, and thus are of no utility. Others do not discuss **Nealy**, do not concern bad faith claims, or discuss a different issue with respect to bad faith claims. The remainder are not binding on this Court because they are either federal cases or Court of Common Pleas cases. **See Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.**, 126 A.3d 959, 972 (Pa. Super. 2015) (holding that "court of common pleas decisions provide, at most, persuasive but not binding authority"); **Kleban v. Nat. Union Fire Ins. Co. of Pittsburgh**, 771 A.2d 39, 43 (Pa. Super. 2001) (citation omitted) (noting that federal court decisions are not binding upon this Court). The decision in **Nealy** controls this matter and thus is binding on this Court. **See Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006). Fidelity's second and third claims do not merit relief.

Accordingly, for the reasons discussed above, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/20