449 A.2d 590

**Robert C. BURNS and Nancy M. Burns, his wife, and John Franklin Destefan and Patricia M. Destefan, his wife**

**v.**

**Richard L. BAUMGARDNER and Marcia H. Baumgardner, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued March 25, 1981.

Filed Aug. 6, 1982.

88

Harvey Freedenberg, Harrisburg, for appellants.

Thomas M. Painter, Waynesboro, submitted a brief on behalf of appellees.

Before PRICE, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

In this equity action, the chancellor imposed building restrictions by implication and enjoined the construction of

townhouses on a development tract in Washington Township, Franklin County. When exceptions were overruled and a final decree entered, this appeal followed.[1] We reverse.

In May, 1966, Dwight and Leona Grove and Richard and Marcia Baumgardner acquired a 175 acre tract in Franklin County. The entire tract was surveyed between May 2, 1966, and October 17, 1966, and a preliminary plan was prepared but never recorded. On November 26, 1966, a plot plan was prepared by Arrowood, Incorporated, for "Sheffield Manor Phase 1" and recorded. It included lots 1 to 12 of Section D. On March 28, 1967, the owners caused to be recorded a Declaration of Restrictive and Protective Covenants in Deed Book Vol. 612, Page 786. This declaration, dated March 9, 1967, pertained to and was limited to lots included in Sheffield Manor Phase No. 1 as shown on plan prepared by Arrowood, Incorporated, dated November 25, 1966. It provided, inter alia, as follows:

1. LAND USE AND BUILDING TYPE: No lot shall be used except for residential purposes. *No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling* not to exceed two and one-half stories in height and private two car garage. All buildings shall be constructed of brick, stone or other non-combustible material, except that no building may be constructed of unfaced concrete blocks and no building may be faced with stucco. Wood construction may be used above the square of the building. (emphasis supplied).[2]

1. Prior to hearing held in the trial court, Robert and Nancy Burns, plaintiffs, withdrew from the case with the approval of the remaining parties. The remaining plaintiffs, John and Patricia Destefan, have advised their counsel that they do not wish to participate in this appeal. Consequently, only appellants have submitted a brief to this court. Plaintiffs' apparent lack of interest is not without significance. See: *Price v. Anderson*, 358 Pa. 209, 56 A.2d 215 (1948).

2. Other restrictions pertained to setbacks, types of construction, sewage, nuisances, architectural control, etc.

On November 7, 1967, a plan entitled "Sheffield Manor Phase 2" was prepared and subsequently recorded. It laid out lots 13 to 27 of Section C and lots 1 to 5 of Section B. On May 20, 1968, a declaration of building restrictions was recorded which imposed upon Phase 2 the same restrictions previously imposed upon Phase 1.

From these two sections, various lots were sold and conveyed. John and Patricia Destefan, the appellees, purchased lot 27 on June 27, 1968. Their deed recited that the lot was subject to the restrictive covenants previously imposed.

On July 12, 1973, Dwight and Leona Grove conveyed their interest in the remaining tract to Richard and Marcia Baumgardner. Their deed recited that the conveyance was ". . . subject to the restrictions set forth in the Declaration of Restrictive and Protective Covenants for Sheffield Manor, Washington Township, Franklin County, Pennsylvania, filed in the office of the Recorder of Deeds of Franklin County in Franklin County Deed Book Vol. 612, Pages 786, 787 and 788."

A subsequent declaration of restrictive covenants was executed for lots 1 and 2 and lots 28 to 39 of Section C. These restrictions, although restricting use to residential purposes, contained no requirement that residences be "detached single-family dwelling[s]."

In March, 1975, individual lot owners learned that appellants intended to erect townhouses on lots 4 to 12 of Section C. These townhouses were designed to be attached by party walls, and each was intended to cover less than one-half of a full lot. An action in equity was commenced to enjoin such construction, and an injunction was issued. The trial court found that although there were no express restrictions which prohibited the erection of townhouses, restrictions imposed upon the entire tract by implication required that only detached, single-family dwellings be erected. When exceptions were dismissed and a final decree entered, this appeal followed.

Restrictions on the use of land are not favored by the law because they are an interference with an owner's free and full enjoyment of his property. *Jones v. Park Lane for Convalescents*, 384 Pa. 268, 272, 120 A.2d 535, 537 (1956). See also: *Witt v. Steinwehr Development Corp.*, 400 Pa. 609, 162 A.2d 191 (1960); *McCandless v. Burn*, 377 Pa. 18, 104 A.2d 123 (1954); *Morean v. Duca*, 287 Pa.Super. 482, 430 A.2d 988 (1981); *Tate v. Moran*, 264 Pa.Super. 540, 400 A.2d 217 (1979). Therefore, they are to be strictly construed. *Mishkin v. Temple Beth El of Lancaster*, 429 Pa. 73, 239 A.2d 800 (1968); *Witt v. Steinwehr Development Corp., supra; Rieck v. Virginia Manor Co.*, 251 Pa.Super. 59, 380 A.2d 375 (1977). They are not to be extended by implication. *Mishkin v. Temple Beth El of Lancaster, supra; Ratkovich v. Randell Homes, Inc.*, 403 Pa. 63, 169 A.2d 65 (1961); *Peirce v. Kelner*, 304 Pa. 509, 156 A. 61 (1931); *DiCarlo v. Cooney*, 282 Pa.Super. 477, 423 A.2d 3 (1980); *Tate v. Moran, supra; Rieck v. Virginia Manor Co., supra.* Indeed, every doubt is to be resolved against the existence of restrictions and in favor of a free and unrestricted use of property by its owner. *Schulman v. Serrill*, 432 Pa. 206, 246 A.2d 643 (1968); *Mishkin v. Temple Beth El of Lancaster, supra; Sandyford Park Civic Association v. Lunnemann*, 396 Pa. 537, 152 A.2d 898 (1959); *Kessler v. Lower Merion Township School District*, 346 Pa. 305, 30 A.2d 117 (1943); *Pehlert v. Neff*, 152 Pa.Super. 84, 31 A.2d 446 (1943). The fact that an owner imposes restrictions on portions of a tract does not raise an inference that he intends thereby to obligate himself to restrict similarly the remainder of his land. In every such instance there must appear definite evidence of a purpose to bind the remaining land. *Price v. Anderson*, 358 Pa. 209, 216, 56 A.2d 215, 219 (1948). See also: *Witt v. Steinwehr Development Co., supra* 400 Pa. at 613, 162 A.2d at 193.

The trial court, by inference, imposed building restrictions against the entire tract because of the "subject to" clause contained in the deed of July 12, 1973, by which Dwight and Leona Grove conveyed their interest in Shef-

field Manor to appellants. This clause provided: "This property is subject to the restrictions set forth in the Declaration of Restrictive and Protective Covenants for Sheffield Manor ... filed in ... Franklin County Deed Book Vol. 612, Pages 786, 787 and 788." The provision, however, was merely an acknowledgement that building restrictions existed with respect to a portion of the tract. It did not create new restrictions or expand existing restrictions to unencumbered portions of the tract.

"[T]he fact that a conveyance is made 'subject to' restrictions set forth in some other deed or instrument referred to will not, without more, make the restrictions applicable to the property conveyed, if in fact the restrictions do not otherwise apply thereto. If the 'subject to' language of the instrument in question refers to restrictions which in fact do not exist at all, it does not operate to impose the supposed restrictions on the granted land." 20 Am.Jur.2d Covenants, Conditions, and Restrictions, § 169, at 728. See also: *De Sanno v. Earle*, 273 Pa. 265, 117 A. 200 (1922); *Smith v. Second Church of Christ, Scientist*, 87 Ariz. 400, 351 P.2d 1104 (1960); *Procacci v. Zacco*, Fla.App., 324 So.2d 180 (1975); *Wiley v. Schorr*, Tex.Civ.App., 594 S.W.2d 484 (1979); Annotation, 84 A.L.R.2d 780 (1962). "Although such reference [i.e., 'subject to'] does not impose new restrictions on the land, it nonetheless serves a very necessary and desirable purpose for the grantor. When property is conveyed by warranty deeds ... it is in the interest of the grantors that the conveyance be made subject to every restriction or encumbrance which not only does apply to such property but also *may* apply. The inclusion of restrictions in the 'subject to' clause may thus express a wise precaution on the part of the grantor (*cf. Donahoe v. Turner*, 204 Mass. 274, 90 N.E. 549 [1910] ). It would indeed be foolhardy for a grantor who is delivering a warranty deed to fail to refer to a restriction which may at some time in the future be held to apply to his property, merely to avoid the criticism of excess wordiness. Thus, it is not unusual for conveyances to be made subject to all recorded covenants, easements and restrictions, without

specific enumeration, and it would be inappropriate, to say the least, to infer restrictions because it may subsequently turn out that none then applied to the property." *Smith v. Second Church of Christ, Scientist, supra,* 87 Ariz. at 408, 351 P.2d at 1109.

For these reasons, we conclude that the trial judge fell into error when he attempted to infer the applicability of building restrictions to the entire tract because of the "subject to" clause contained in the deed from the Groves to the Baumgardners. This is peculiarly so where, as here, only a one-half interest in the land was conveyed.

The trial court also inferred a subjection of the entire tract to building and use restrictions from representations which had been made by Richard Baumgardner. These representations, there was evidence to show, had been made to prospective purchasers of building lots. They were to the effect that restrictions requiring single family residences would be imposed upon the entire tract. Appellants contend that even if the oral representation were construed as prohibiting townhouses, the imposition of building restrictions by parol is precluded by the Statute of Frauds. Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1.[3]

An easement is within the purview of the Statute of Frauds. *Haines v. Minnock Construction Company,* 289 Pa.Super. 209, 216, 433 A.2d 30, 33 (1981), citing *Yeakle v. Jacob,* 33 Pa. 376 (1859). An easement is a liberty, privilege, or advantage which one may have in the lands of another; it may be merely negative and may be created by a covenant or agreement not to use the land in a certain way. *Clements v. Sannuti,* 356 Pa. 63, 65, 51 A.2d 697, 698 (1947); *Slegel v. Lauer,* 148 Pa. 236, 240, 23 A. 996, 997 (1892). The

**3.** The Statute of Frauds provides that ". . . all leases, estates, interests of freehold or term of years, or any uncertain interest of, in, or out of any messuages, manors, lands, tenements or hereditaments, made or created by livery and seisin only, or by parol, and not put in writing, and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect . . . ."

Statute of Frauds is applicable to alleged agreements to impose building and use restrictions upon land. Thus, it has been held to apply to an alleged oral agreement to limit the number of dwelling units on a tract of land and the heights of buildings. *Overbrook Farms Club v. MacCoy*, 32 Pa D&C 2d 603 (Montg.1963). See also: *Bealer v. Dodson*, 37 Northam.Co.Rep. 35 (1963).

The Statute of Frauds is not a rule of evidence, but a declaration of public policy. *Schuster v. Pennsylvania Turnpike Commission*, 395 Pa. 441, 149 A.2d 447 (1959); *Brotman v. Brotman*, 353 Pa. 570, 46 A.2d 175 (1946). The purpose of the Statute of Frauds is to prevent the possibility of enforcing unfounded, fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence signed by the party creating the interest. *Haines v. Minnock Construction Company, supra* 289 Pa.Super. at 215–16, 433 A.2d at 33. It is satisfied by the existence of a written memorandum signed by the party to be charged and sufficiently indicating the terms of the oral agreement so that there is no serious possibility of consummating fraud by its enforcement. *Keil v. Good*, 467 Pa. 317, 322, 356 A.2d 768, 771 (1976); *Beeruk Estate*, 429 Pa. 415, 419, 241 A.2d 755, 758 (1968); *Brown v. Hahn*, 419 Pa. 42, 51, 213 A.2d 342, 347 (1965).

In the instant case, no such memorandum was produced. The lot owners sought to overcome this weakness in their case by testifying that a copy of such restrictions had been shown to them by Baumgardner at the time they purchased their lot. Mrs. Destefan testified that the typewritten restrictions shown to her and her husband were similar to those contained in the initial declaration recorded in Deed Book Volume 612, Page 786. However, she was uncertain that the contents or the caption were the same. This was patently inadequate to impose permanent building restrictions upon the entire remaining tract owned by appellants.

It remains to be considered whether the promises which the trial court found appellants to have made are enforceable by estoppel. In the Restatement of Property § 524, the following principle is set forth:

An oral promise or representation that certain land will be used in a particular way, though otherwise unenforceable, is enforceable to the extent necessary to protect expenditures made in reasonable reliance upon it.

The rule is further explained in Comment c, where the following appears:

c. *Promises by conveyors.* Not infrequently promises coming wholly or partly within the rule stated by the Section are made as part of the negotiations leading to a sale of land to the promisee. To induce a prospective purchaser to buy, or to persuade him to buy subject to restrictions upon his use, the vendor will state that other land owned by him will be used or sold subject to like restrictions .... The promises may later be incorporated in the conveyance by specific language or by reference to a source such as a plat in which they may be found to exist in written form. If so, they become enforceable according to their tenor. Yet, even though not so incorporated, they can be enforced by the promisee if he reasonably relies upon them in purchasing or in making improvements upon the land after it is purchased.

The rule is illustrated by the Restatement as follows:

1. A conveys Blackacre to B by a deed in which it is stipulated that the land conveyed shall be used only for dwelling house purposes. No promises respecting the use of other land of A are contained in the deed. A does, however, own other land in the vicinity and, as an inducement to the purchase of Blackacre, he tells B that this other land will be sold subject to the same restriction to which B's land is to be subjected. In reasonable reliance upon this promise, B purchases. A may be enjoined from selling the other land free from the restriction.

The rule was followed by this Court in *Haines v. Minnock Construction Co., supra.*

The rule is in large measure contrary to the policy established by the Statute of Frauds. It should be strictly construed. Before an oral promise can be enforced because of estoppel, there must be *reasonable* reliance on the promise. Moreover, enforcement will be granted only to the extent necessary to protect expenditures made in reasonable reliance upon the promise. Equity will not grant relief in the absence of a substantial benefit to the plaintiff. "An injunction is not of right, and the chancellor is not bound to make a decree which will do far more mischief . . . than the loss he is asked to redress." *Plymouth Woods Corporation v. Maxwell*, 407 Pa. 539, 542, 181 A.2d 321, 323 (1962), quoting *Moyerman v. Glanzberg*, 391 Pa. 387, 393, 138 A.2d 681, 684 (1958).

The trial court found that appellees, who owned one of many lots, had relied upon appellants' promises in purchasing their lot and building a home upon it. The court made no finding regarding the reasonableness of such reliance. Neither was there a finding that the imposition of permanent and perpetual use restrictions upon the entire tract, requiring but one detached, single family residence per lot, was essential to preserve and protect appellees' lot and the expenditures which they had made to improve the same.

We find it unnecessary to determine whether it was reasonable for appellees to rely upon an oral representation that an entire tract of 175 acres would be subjected to restrictions requiring one single family, detached dwelling per lot. We observe, however, that only a small portion of the tract was under development when they purchased their lot, and the undeveloped portion of the larger tract had not, in fact, been subjected to restrictions by recorded, written instrument.[4] In any event, it is abundantly clear that an

4. The testimony of the developer was that full development would take at least ten years and that the reason for developing the tract in small sections was to permit variations in construction as dictated by economic conditions.

injunction intended to enforce such a restriction on the entire tract was unnecessary to protect the expenditures made by appellees in reliance thereon and would arbitrarily and unnecessarily hinder development of the tract for residential purposes.

John Destefan, when asked if he would be harmed, responded: "Physically, no. Mentally, yes, sir." Mrs. Destefan, when asked how she saw damages, said: "I feel that no one and probably the most important reason that I have is it is a breach of contract. The restrictions were promised. This man went back on his promise. That is probably the biggest impact it has had on me, above all, because we built out there with the understanding that we were going to be living in a residential development . . . ." Although there were also vague references by appellees to increased traffic and density caused by townhouses and the possible prevention of a rapid increase in the value of their home, there was no evidence that the residential character of the neighborhood would be changed by the introduction of townhouses. On the contrary, the evidence suggested that detached, single family dwellings were no longer feasible economically and that, if not appropriately developed, the tract would be used for farm purposes.

Under these circumstances, it was an abuse of discretion to enjoin the development of the entire tract except for detached, single family residences. It was unreasonable to impose use restrictions by estoppel upon an entire 175 acre tract despite the fact that there was no written or recorded evidence that such had been imposed by the owner. The relief granted was grossly disproportionate to the harm sustained by appellees, if any, and was unnecessary to protect the expenditures which they had made in reliance upon appellants' oral representation. For these reasons, the injunction entered by the trial court cannot be sustained on principles of estoppel.

Because the evidence does not support an order imposing, by inference, building and use restrictions which prevent the

construction of townhouses on appellants' land, the order will be reversed and set aside.

It is so ordered.

PRICE, J., dissents.