STAPLETON, Circuit Judge,
dissenting:
I respectfully dissent.
I start with the proposition that restrictive covenants in prior conveyances are binding only against future lessees with actual or constructive notice before the lease is signed. See Finley v. Glenn, 303 Pa. 131, 154 A. 299, 301 (1931); see generally 3 M. Friedman, Friedman on Leases § 28.601 (3d ed.1990). J.C. Penney’s lease agreement thus will not support the district court’s injunction in the absence of actual or constructive notice to Giant Eagle.
*130 I believe the record contains insufficient evidence to permit a finding that Giant Eagle had actual notice of J.C. Penney’s exclusive when Giant Eagle signed its lease in 1977. In any event, as the court acknowledges, the district court made no finding that Giant Eagle had actual notice at that time. Based on the particular facts of this case, however, we may assume, arguendo, that Giant Eagle had actual notice of the exclusive in 1977. We may also assume, without deciding, that 21 Pa. Stat. Ann. § 407 applies here and that Giant Eagle had constructive notice in 1977 of the existence and provisions of J.C. Penney’s 1962 lease, including the restrictive covenant. Finally, we may also assume without deciding that J.C. Penney’s 1978 lease effectively continued the 1962 pharmacy exclusive in the new location within the shopping center — that is, that the restrictive covenant runs with the restricted land retained by the landlord (the entire shopping center), not with the premises originally leased by J.C. Penney in 1962. Thus, had J.C. Penney merely moved to a new storefront within the shopping center in 1978 but otherwise retained all the provisions of the 1962 lease, including the original term and renewal rights provisions, we may assume that Giant Eagle could have been bound by the restrictive covenant for the maximum 30-year term of the 1962 lease.
While the 1978 lease alone, independently of the 1962 lease, may bind co-tenants who signed leases after 1978, it cannot bind a preexisting tenant such as Giant Eagle. The critical issue, then, is whether J.C. Penney’s 1978 lease could operate as an extension of the restrictive covenant in the 1962 lease beyond its original maximum term of 30 years.
In 1977, Giant Eagle had notice that J.C. Penney’s 1962 lease would expire, at the latest, 30 years from its effective date, or August 31, 1993. Giant Eagle cannot be bound by any extension of the restrictive covenant beyond that date because J.C. Penney’s lease did not include any such extension right at the time Giant Eagle signed its lease.
Pennsylvania’s lease recording statute explicitly requires that a memorandum of lease must contain the expiration date of the final period for any right of extension or renewal. 21 Pa. Stat. Ann. § 405. Notice of the maximum term of a lease is important because the term partly defines or circumscribes the rights of a purchaser, mortgagee, or judgment creditor — or, as I have assumed, a tenant to be bound by a co-tenant’s restrictive covenant. A purchaser with notice of a recorded lease takes the property subject to that lease only for the maximum term; that is, the purchaser has bought the right to hold the property free of the leasehold interest after the final expiration date indicated in the recorded lease agreement. Similarly, a tenant who enters into a shopping center lease agreement, with at least constructive notice of a co-tenant’s lease containing a restrictive covenant, has bought the right to be free from the restrictive covenant at the expiration of the co-tenant’s lease as recorded.
Allowing a tenant to extend a binding restrictive covenant by merely extending the term of its lease beyond the original, maximum term would operate to bind a co-tenant to a restrictive covenant for a period of time during which the co-tenant had no notice it could be bound. There is no principled difference between binding a co-tenant to such an extension and binding a co-tenant to a restrictive covenant of which it had no notice at all in the first instance: either way, a co-tenant’s property rights are more restricted than they were disclosed to be at the time the co-tenant entered into its lease agreement.
Giant Eagle signed its lease in 1977, halfway through the maximum 30-year term of J.C. Penney’s 1962 lease, with notice that J.C. Penney’s pharmacy exclusive would prohibit Giant Eagle from operating a pharmacy until 1993 at the latest. The district court’s holding necessarily implies that Giant Eagle had no right to expect, in 1977, that it could operate a pharmacy department after 1993 for the remaining 24 years of its lease. In other words, the district court’s rule would have given J.C. Penney and the landlord the right at any time prior to 1993 to decide between themselves to bind Giant Eagle to an extension of the restrictive covenant without obtaining Giant Eagle’s consent. Such a *131 rule cannot be correct because it operates retroactively to restrict a tenant’s property rights under its lease agreement.[1]
I would accordingly decide that, at least with respect to pre-existing tenants such as Giant Eagle, J.C. Penney’s 1978 lease did not extend the pharmacy exclusive beyond the expiration of the maximum term of the 1962 lease on August 31, 1993. We may assume that Giant Eagle was thus in violation of the restrictive covenant when it opened its pharmacy department in August 1992, and when the district court granted J.C. Penney’s motion for a preliminary injunction the following month. However, by the time the district court ordered permanent injunctive relief in January 1995, J.C. Penney’s exclusive was no longer binding against Giant Eagle. J.C. Penney’s exclusive, therefore, cannot be a basis for affirming the permanent injunction. I would reverse the judgment of the district court, thereby vacating the permanent injunction.[2]

. It is, of course, true as the court observes that J.C. Penney and the landlord were free to negotiate and enter a new lease at the end of the term of the 1962 lease in 1993. But the landlord was not free at that time to grant J.C. Penney something it had previously sold to Giant Eagle. If, as I believe to be the case and the court does not dispute, Giant Eagle’s 1977 lease granted it the right to operate a pharmacy, the landlord’s retained interest was not sufficient to allow it to grant someone else in 1993 the exclusive right to operate a pharmacy in the same shopping center. The court holds that J.C. Penney and the landlord intended in 1962 "to allow extension of the exclusive right as they might see fit in the future,” and in 1978 "to extend and renew Penney’s 1962 exclusive right.” (Maj. Op. at 128.) But, whatever the parties' intent, the 1962 lease did not grant J.C. Penney the right to extend its exclusive beyond the 30-year maximum term of the lease, and the 1978 lease is thus unable to invoke such a nonexistent right. It is elementary that, no matter how clear their intent, two parties cannot contract away the existing property rights of a third party.

. J.C. Penney urges that we could affirm the judgment of the district court on the ground that Giant Eagle's own lease agreement does not permit Giant Eagle to operate a pharmacy department. Under Pennsylvania law, however, ambiguities in land use restrictions are resolved in favor of the least restrictive interpretation. See, e.g., Great Atlantic and Pacific Tea Co. v. Bailey, 421 Pa. 540, 220 A.2d 1, 3 (1966); Burns v. Baumgardner, 303 Pa.Super. 85, 449 A.2d 590, 593 (1982); Carousel Snack Bars of Minn., Inc. v. Crown Constr. Co., 439 F.2d 280, 283 (3d Cir.1971) (applying Pennsylvania law). This is, of course, the general rule elsewhere. See, e.g., Robert Schoshinski, American Law of Landlord and Tenant § 5:6, at 242 (1980). Based primarily on this rule, I would hold that the use provision in Giant Eagle’s lease is not limited to non-pharmacy uses. Even if I were not so persuaded, however, I would hold that J.C. Penney is not a third party beneficiary of the Giant Eagle lease and, accordingly, lacks standing to enforce any use restrictions that might be found therein. See Scarpitti v. Weborg, 530 Pa. 366, 609 A.2d 147, 150-51 (1992). Thus, I find no alternative basis for affirming the judgment of the district court.