J-A24006-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| BHOOP SEHRAWAT, TRUSTEE UNDER THE RATTAN REAL ESTATE TRUST | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RITE AID OF PENNSYLVANIA, INC. | : | No. 1901 WDA 2019 |
| Appellant | : | |

Appeal from the Order Entered December 2, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-17-009057

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                FILED NOVEMBER 13, 2020

Rite Aid of Pennsylvania, Inc. ("Rite Aid") appeals from the order dated

November 30, 2019, and entered on December 2, 2019, denying its motion

for summary judgment, granting Bhoop Sehrawat's, Trustee Under the Rattan

Real Estate Trust ("Rattan Trust"), cross-motion for summary judgment, and

declaring void ab initio an easement agreement purportedly entered in favor

of Rite Aid. After careful review, we affirm.

This case commenced on June 23, 2017, with the filing of a complaint

in an action to quiet title by Rattan Trust.

> The dispute involves a shared parking lot between two commercial
> properties. The entrance driveway and most of the lot is located

on property owned by [Rattan Trust].[1]   [Rite Aid] has title only to the land occupied by the ten parking spaces closest to its building.  The instant dispute involves [Rattan Trust's] claim that [it] had no notice, actual or constructive, of the existence of a written easement in favor of [Rite Aid] for access from the street to its ten spaces when [it] purchased the property in question. [Rite Aid's] argument and counterclaim is that it was granted an express easement via a written grant dated September 4, 2001. Alternatively, [Rite Aid] argues that it has either an easement by estoppel or an irrevocable license.

Trial Court Memorandum ("TCM"), 11/30/19, at 1-2.

In its memorandum, the trial court found the following undisputed facts:

1)     There is a single parking lot located between the buildings of the parties.

2)     There is a single entrance into the parking lot from the street.

3)     [Rattan Trust] has title to most of the parking lot, including the portion where the only entrance to the lot is located; if [Rite Aid] cannot use that entrance, it cannot use the spaces on its own land.

4)     The listing of [Rattan Trust's] property for sale referred to a shared parking lot.

_____

[1] Rattan Trust's property consists of its portion of the parking lot (Block and Lot No. 14-R-346), as well as the adjacent property known as 240 Hays Avenue, Mt. Oliver, PA  15210 (Block and Lot No. 14-R-350), on which a Family Dollar store is located.  The Rattan Trust property was previously owned and conveyed by Charles E. Beckman and Jean R. Beckman to Jean E. Beckman by a deed, dated September 1, 1994, and recorded in the Allegheny County Office of the Department of Real Estate.  Following the death of Jean Beckman on December 30, 2001, the property was conveyed by Charles Beckman, the executor of her estate, to Charles Beckman and Jill Beckman, Trustees under the Will of Jean Beckman, by deed dated December 4, 2002. Jill Beckman resigned as Trustee on May 3, 2007, and Charles Beckman died on February 19, 2010.  On April 2, 2010, Lucinda R. Nachman was appointed as Successor Trustee to the estate.  The property was subsequently conveyed by the Successor Trustee under the will of Jean Beckman to Rattan Trust, pursuant to a recorded deed dated March 16, 2011.

5)  [Rattan Trust] purchased the property on which [its] building stands[,] along with the portion of the parking lot[,] on March 16, 2011, subject to the existing lease to Family Dollar Stores of Pennsylvania, Inc., which also showed that [Rite Aid] had the right to use 10 spaces on the lot and Family Dollar had the right to use the 10 spaces on its side of the lot. (The evidence suggests that the public used spaces on either side of the lot regardless of which business was being visited. The evidence also suggests that[,] at times[,] members of the public would park there and visit neither party's business. There is no indication that either party claimed the other was using more than its allotted share.)

6)  There is no contention that [Rattan Trust] was not given a copy of this lease as required by the Addendum to the Agreement of Sale.

7)  [Charles Beckman, t]he husband of [Jean Beckman, Rattan Trust's] seller's predecessor in title[,] had purported to grant an easement to [Rite Aid] on September 4, 2001, for access over the driveway to its ten spaces in the area of the lot closest to its building.[2]

8)  The [Easement Agreement] was not recorded until April 28, 2017.

9)  [Rattan Trust] was unrepresented by counsel both at the time [it] signed the agreement of sale and at [the] closing.

10) Prior to [the] closing, [Rattan Trust] … made inquiry via [its] agent[, Rick Sikora,] about whether there were any writings related to easements.

11) [Rattan Trust] denies having received any response from [its] agent, and the agent's testimony, years later, is that he has no recall of any written easement having been brought to his attention.

_____

[2] The written document by which an easement was purportedly granted to Rite Aid is referred to herein as the "Easement Agreement."

12) The [s]eller's agent[, Bruce McIlrath,] also recalls nothing about an easement.

13) An affidavit from [Jill Beckman,] a representative of the [s]eller[,[3]] states that she responded to an inquiry by forwarding a copy of the [E]asement [Agreement] to the [s]eller's agent. No copy of a power of attorney was included.

14) All witnesses who were deposed indicated that knowledge of a written easement would have been a highly significant event that each would have remembered.

15) [Rattan Trust] admits [it] did nothing further when [it] received no reply to [its] inquiry.

16) [Rite Aid] admits that it did not record the [Easement Agreement] until years after [Rattan Trust] purchased the property.

17) [Rite Aid] admits that it has no evidence to support its contention that it contributed to the maintenance of the parking lot.[4]

18) [Rite Aid] has no copy of any power of attorney giving Charles Beckman the right to do anything regarding his wife, including a right to handle her real estate.

_____

[3] Jill Beckman is the daughter of Charles and Jean Beckman and negotiated the sale of the property to Rattan Trust, on behalf of her mother's estate.

[4] After reviewing the transcript from the oral argument, the trial court issued a supplemental opinion, modifying its Finding of Fact No. 17, as follows:

> While [Rite Aid] does not expressly admit that it has no evidence that it contributed to the cost of maintenance of the parking lot and driveway entrance, it points to only one piece of evidence to support its contention that it made such contribution pursuant to an agreement with the prior owners of the property: the affidavit of Jill Beckman, the contents of which do not support [Rite Aid's] contention.

Trial Court Supplemental Opinion ("Supplemental TCO"), 3/27/20, at 1 (citation to record omitted).

19) There is no indication by the [n]otary that a power of attorney was presented at the time of signing or that Charles Beckman had signed pursuant to a power of attorney.

20) The [Easement Agreement] as signed had two blanks in it, apparently to insert the relevant Deed Book volume and page. The blanks were not filled in until years later, a few months prior to recording.

Id. at 2-3.

Following multiple depositions, Rattan Trust and Rite Aid filed cross motions for summary judgment on August 26, 2019, and August 30, 2019, respectively. The trial court heard arguments on the cross motions on September 26, 2019, and it issued an order on November 30, 2019, granting Rattan Trust's motion for summary judgment, denying Rite Aid's motion for summary judgment, and declaring the Easement Agreement void ab initio. The order was entered on the docket on December 2, 2019. Rite Aid filed a timely notice of appeal on December 27, 2019, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Rite Aid now presents the following issues for our review:

1. Whether the lower court erred when it granted the motion for summary judgment of [Rattan Trust] and denied the motion for summary judgment of ... Rite Aid?

2. Whether the lower court erred when it found that the [E]asement [A]greement dated September 4, 2001[,] and recorded on April 28, 2017[,] is void ab initio and must be stricken from the record?

3. Whether the lower court erred when it found, contrary to the weight of the evidence, that[] "the evidence suggests that the public used spaces on either side of the lot regardless of which business was being visited[?] The evidence also suggests

that at times members of the public would park there and visit neither party's business[."]

4. Whether the lower court erred when it found, contrary to the weight of the evidence, that[] only "[t]he husband of … [Rattan Trust's] seller's predecessor in title had purported to grant an easement to … [Rite Aid] on September 4, 2001, for access over the driveway to its ten spaces in the area of the lot closest to the building[?"]

5. Whether the lower court erred when it found, contrary to the weight of the evidence, that[] " … [Rite Aid] admits that it has no evidence to support its contention that it contributed to the maintenance of the parking lot[?"]

6. Whether the lower court erred when it found, contrary to the weight of the evidence, that[] "there is no indication by the notary that a power of attorney was presented at the time of signing or that Charles Beckman had signed pursuant to the power of attorney[?"]

7. Whether the lower court erred when it found, contrary to the weight of the evidence, that[] "there is no proof that the signer of the [Easement Agreement] had a valid power of attorney at the time it was signed[?"]

8. Whether the lower court erred as a matter of law and abused its discretion when it found that once the authority of Charles Beckman was questioned, the "the burden shifted to … [Rite Aid] to adduce evidence that there was indeed a power of attorney[?"]

9. Whether the lower court erred when it speculated that[] "the failure to record the [Easement Agreement] … around the time it was signed, along with the absence of any copy of a power of attorney from Jean Beckman to Charles Beckman, suggests that it is just as likely as not that there was no power of attorney at all[?"]

10. Whether the lower court erred when it found that Rite Aid does not have an irrevocable license or easement by estoppel to use the access land of the parking lot between the building on Rite Aid's property and the building on … Rattan Trust's property[,] because "the court is compelled to conclude that under the undisputed evidence and the relevant and

- 6 -

undisputed law of Pennsylvania regarding contribution to the maintenance of the parking lot, ... [Rite Aid] has neither[?"]

Rite Aid's Brief at 5-8 (unnecessary capitation and some brackets omitted).

Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is well-settled:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

Thompson v. Ginkel, 95 A.3d 900, 904 (Pa. Super. 2014) (some citations omitted).

Essentially, the main matters of contention raised by Rite Aid in issues 1 through 9 are whether Rattan Trust had sufficient notice, constructive or actual, of an easement in favor of Rite Aid at the time of the closing on its properties, and whether the written Easement Agreement should be stricken. We have defined an easement as "a liberty, privilege or advantage which one may have in the lands of another without profit.... Generally, it requires that

there be two tenements owned by distinct proprietors, one to which the right is attached and another on which it is imposed." Morning Call, Inc. v. Bell Atlantic-Pennsylvania, Inc., 761 A.2d 139, 142 (Pa. Super. 2000) (internal quotation marks and citation omitted). "An easement may be created by express agreement in compliance with the Statute of Frauds,[5] or by implication, necessity, or prescription." Id.

Here, Rite Aid claims that it was granted an easement via a written document, the Easement Agreement, which was executed on September 4, 2001, but not recorded until April 28, 2017. Pursuant to 21 P.S. § 351,[6] there

_____

[5] "The purpose of the Statute of Frauds is to prevent the possibility of enforcing unfounded, fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence signed by the party creating the interest." Burns v. Baumgardner, 449 A.2d 590, 594 (Pa. Super. 1982).

[6] Section 351 of Title 21, Pennsylvania Statutes provides:

§ 351. Failure to record conveyance

All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate,

is no mandatory requirement to record a conveyance of real property; however, the consequence for the failure to do so is that the conveyance will be rendered void as to any subsequent bona fide purchaser. See MERSCORP, Inc. v. Delaware County, 207 A.3d 855, 863-65 (Pa. 2019). "[I]n order to qualify as a bona fide purchaser, the subsequent buyer must be without notice of the prior equitable interests of others.... Either actual or constructive notice is sufficient to prevent the subsequent purchaser from acquiring the status of a bona fide purchaser." Long John Silver's, Inc. v. Fiore, 386 A.2d 569, 573 (Pa. Super. 1978).

Rite Aid argues that Rattan Trust is not a bona fide purchaser, because it had actual and/or constructive knowledge of the Easement Agreement at the time of purchase of its property. Contrary to Rite Aid's position, the trial court found that the evidence established constructive notice only of Rite Aid's use of a portion of the parking lot, and that there was no evidence that Rattan Trust had actual notice of the Easement Agreement. Trial Court Opinion ("TCO"), 2/28/20, at 4. We conclude that, regardless of whether Rattan Trust had notice—actual or constructive—of the purported Easement Agreement,

---

> without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

21 P.S. § 351.

such notice is of no moment given that the Easement Agreement is void ab initio.

We now turn to our analysis of the crux of this matter, which is the validity of the Easement Agreement. The record, here, reveals that the Easement Agreement was signed twice by Charles Beckman, as grantor—once as himself and once purporting to be signing as power of attorney on behalf of Jean Beckman. Jean Beckman's signature does not appear on the document. It is clear that at the time the Easement Agreement was executed, Charles Beckman had no ownership interest in the subject property[7] and, consequently, no authority to convey a right-of-way across the parking lot. See Woodland Trustees, Inc. v. Michel, 211 A.2d 454, 456 (Pa. 1965) (indicating that "one may not grant an easement over property he does not own"). Thus, we must consider whether Charles Beckman had the authority to convey an interest in the real estate on Jean Beckman's behalf.

Instantly, the Easement Agreement was purported to have been signed by Charles Beckman on behalf of Jean Beckman, pursuant to a power of attorney. Thus, we review the following applicable principles of law pertaining to agency and powers of attorney.

> Agency is a relationship whereby the principal manifests assent that another person (the agent) will act on the principal's behalf subject to the principal's control, and the agent agrees to do so. An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Agency cannot be

---

[7] Jean Beckman was the sole record owner of the subject property at the time.

> inferred from mere relationships or family ties, and we do not assume agency merely because one person acts on behalf of another. Rather, we look to facts to determine whether the principal expressly or impliedly intended to create an agency relationship.... Finally, the party asserting the agency relationship bears the burden of proving it by a preponderance of the evidence.
>
> Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters.... A valid, durable power of attorney constitutes a grant of express authority per its terms. See 20 Pa.C.S.[] § 5601(a).

Wisler v. Manor Care of Lancaster PA, LLC, 124 A.3d 317, 323-24 (Pa. Super. 2015) (some internal quotation marks and citations omitted).

Powers of attorney are governed by statute, 20 Pa.C.S. §§ 5601-5614 (the "POA Act"). Section 5601 of the POA Act requires, inter alia, a power of attorney to be in writing, dated, and signed by the principal granting the authority. 20 Pa.C.S. § 5601(b)(1). The scope of authority under a power of attorney is determined by the language of the document creating the agency, in conjunction with the POA Act. See In re Fiedler, 132 A.3d 1010, 1021 (Pa. Super. 2016) (citing In re Weidner, 938 A.2d 354, 357-58 (Pa. 2007) (analyzing the language of the power of attorney in the context of the POA Act to determine the propriety of the agent's actions)). Pursuant to Section 5602 of the POA Act, a principal may empower an agent "to engage in real property transactions" by including such language in the power of attorney. 20 Pa.C.S. § 5602(a)(10).[8]

Moreover, we are mindful of the following applicable principles:

_____

[8] A power "to engage in real property transactions" is defined by the POA Act to include the granting of easements. 20 Pa.C.S. § 5603(i).

- 11 -

> [A] party dealing with an agent, known to be acting only under an express grant of authority (such as a power of attorney), has a duty to take notice of the nature and extent of the authority conferred. Fierst v. Commonwealth Land Title Ins. Co., ... 451 A.2d 674, 677 ([Pa.] 1982), citing Moore v. Luzerne County, ... 105 A. 94, 95 ([Pa.] 1918). See also Restatement (Second) of Agency, § 167 (1958) ("If a person dealing with an agent has notice that the agent's authority is created or described in a writing which is intended for his inspection, he is affected by limitations upon the authority contained in the writing, unless misled by conduct of the principal."). Parties are bound at their own peril to notice limitations upon the grant of authority before them, whether such limitations are prescribed by the grant's own terms or by construction of law. Fierst, 451 A.2d at 677.... Finally, the existence of a limitation upon the authority conferred by a power of attorney must be determined in light of the rule that such powers are to be strictly construed. See Nuzum v. Spriggs, ... 55 A.2d 402, 403 ([Pa.] 1947).

Peterson v. Kindred Healthcare, Inc., 155 A.3d 641, 645-46 (Pa. Super. 2017).

Here, Rite Aid claims the trial court's determination that the Easement Agreement is void ab initio is based on its erroneous finding that the document was not properly executed. Rite Aid's Brief at 16. Rite Aid avers that, on its face, the Easement Agreement reveals it was signed by Charles Beckman on behalf of Jean Beckman, pursuant to a power of attorney. Id. Additionally, Rite Aid insists that the notary certification on the Easement Agreement stands as prima facie evidence that a valid, written power of attorney existed at the time the document was executed. Id. Rite Aid's argument fails, however, because the notary seal on the Easement Agreement certifies only that "[t]he foregoing instrument was acknowledged before [the notary] this 14th day of August, 2001, by Charles E. Beckman[.]" See Complaint for Action to Quiet

Title, 6/23/17, Exhibit 4, at 3 (unpaginated). There is no reference to or acknowledgment of a power of attorney in the notary seal, or any indication whatsoever that Charles Beckman signed on behalf of Jean Beckman.[9]

It is well-settled that:

When a notary public does certify a document, he attests that the document has been executed or is about to be executed, that the notary knows that he is confronted by the signer, and that the signer is asserting the fact of his execution. In re Bokey's Estate, ... 194 A.2d 194 ([Pa.] 1963). Notarization certifies the fact of execution by a person who purports to be the signer but not any fact beyond that, such as the place of notarization. As this court has sad,

"(A] notary's certificate shall be read and received in all suits in evidence of the [f]acts therein certified; not of [f]acts not certified but attempted to be inferred from those facts." Bell v. Anderson, ... 17 A.2d 647, 651 ([Pa. Super.] 1941).

Commonwealth v. Frey, 392 A.2d 798, 799-800 (Pa. Super. 1978). Based on the foregoing, it is clear that we cannot infer from the notary certificate that Charles Beckman produced a copy of a durable power of attorney at the time of signing. The notary certificate on the Easement Agreement acts only as prima facie evidence that Charles Beckman appeared before the notary and signed the document as himself, which is inconsequential, as we have already determined that he had no authority to convey an easement over the subject property.

_____

[9] By contrast, a separate notary seal on the Easement Agreement represents that the document was acknowledged before the notary, "by Eve K. Exar, the Authorized Representative of Rite Aid..., on behalf of the corporation." Id. (emphasis added).

Next, Rite Aid asserts that the trial court erred when it shifted the burden to Rite Aid to disprove Rattan Trust's assertion that Charles Beckman lacked authority to execute the Easement Agreement on Jean Beckman's behalf. See Rite Aid's Brief at 17. Rite Aid maintains that, as the party seeking to quiet title, Rattan Trust has the burden of proof, and that Rattan Trust cannot baldly challenge the validity of the previously executed and recorded Easement Agreement and then "force" Rite Aid to prove its validity. Id. at 17-18.

While it is true that Rattan Trust has the general burden of proof in his quiet title action, see Landis v. Wilt, 222 A.3d 28, 34 (Pa. Super. 2019), we agree with the trial court that Rite Aid has the burden of proving the existence of the power of attorney. See Wisler, 124 A.3d at 323 (indicating that the party asserting the agency relationship bears the burden of proving it by a preponderance of the evidence). As the trial court explained,

> once the authority of [Charles] Beckman to make the grant contained in the [Easement Agreement] was raised, the burden shifted to [Rite Aid] to adduce evidence that there was indeed a power of attorney, including one that permitted the handling of real estate matters. [Rite Aid] was unable to do so.[10] We note that the failure to record the [Easement Agreement] around the time it was signed, along with the absence of any copy of a power of attorney from Jean Beckman to Charles Beckman, suggests that it is just as likely as not that there was no power of attorney at all. The [Easement Agreement] is void ab initio and must be stricken.

_____

[10] "The only evidence cited [by Rite Aid] is [an] e-mail that did not include [a] copy of the supposed power of attorney." TCO at 4-5.

- 14 -

TCM at 4. Based on the facts of record, Rite Aid clearly failed to adduce sufficient evidence regarding the existence of a power of attorney. Thus, Rattan Trust was entitled to judgment as a matter of law. See Young v. Commonwealth, Dept. of Transp., 744 A.2d 1276, 1277 (Pa. 2000) ("Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof … establishes the entitlement of the moving party to judgment as a matter of law.").

Rite Aid acknowledged that in order for a power of attorney to be valid, it must be in writing. See N.T. Hearing, 9/26/19, at 38 ("If it was never in writing, I think we concede that it probably would be invalid."). Yet, it peculiarly argues that "there is no evidence that [the power of attorney] wasn't in writing[,]" that, unfortunately, Rite Aid has been unable to locate a copy of the document, and "[t]hat in and [of] itself does not prove that it was never in writing." Id. Rite Aid is essentially asking the court to conclude— from the absence of evidence—that it met its burden of proving that Charles Beckman had the authority to sign the Easement Agreement for Jean Beckman. We decline to find trial court error on this basis. See Wisler, 124 A.3d at 327 (declining to find trial court error where the appellant sought a determination—from the absence of evidence—that it met its burden of proving the decedent had authority to sign an arbitration agreement).

To the extent Rite Aid suggests that declining to sustain the Easement Agreement based on its failure to produce a copy of the power of attorney sets a dangerous precedent, we disagree. Our decision should encourage

parties seeking an agreement to ascertain the source of an agent's authority before allowing the agent to sign such agreement on the principal's behalf. As we stated in Wisler, "[I]f a third party relies on an agent's authority, it must ascertain the scope of that authority at the time of reliance. See Fierst, 451 A.2d at 677; Restatement (Second) of Agency § 167 (1958). The third party that fails to do so acts at its own peril." Wisler, 124 A.3d at 327. In other words, Rite Aid had a duty to inspect the power of attorney and to take notice of the extent of the authority conferred upon Charles Beckman. If Rite Aid failed to do so prior to executing the Easement Agreement, then it did so at its own peril and cannot now hold Rattan Trust accountable for its failure. Based on the foregoing, we discern no abuse of discretion or error of law in the trial court's determination that the Easement Agreement is void ab initio.

Alternatively, Rite Aid claims that it has an irrevocable license or an easement by estoppel. Rite Aid argues that it is entitled to summary judgment on its claim,

> if it can show by the undisputed facts that it had a right to permissively use the parking lot[,] that it contributed to the maintenance of the parking lot in reliance on its right to use [it,] and that Rattan Trust had notice of Rite Aid's right to use the portion of the parking lot located on [Rattan Trust's] property.

Rite Aid's Brief at 39-40 (unnecessary capitalization omitted). After careful review, we deem this claim to be meritless.

Preliminarily, we note:

> Licenses are often compared to easements. In general, a license is a mere personal or revocable privilege to perform an act or series of acts on the land of another, which conveys no interest or

- 16 -

estate. A license is distinguishable from an easement because it is usually created orally, is revocable at the will of the licensor, and is automatically revoked by the sale of the burdened property. However, a license may become irrevocable under the rules of estoppel and in those circumstances it is similar to an easement.

The Pennsylvania Supreme Court adopted the equitable doctrine of irrevocable license in the mid-nineteenth century stating that "a license to do something on the licensor's land when followed by the expenditure of money on the faith of it, is irrevocable, and is to be treated as a binding contract." Huff v. McCauley, 53 Pa. 206, 208 (1866); Kovach v. General Telephone Co., … 489 A.2d 883, 885 ([Pa.] 1985). The Court subsequently explained that such a license,

> while not strictly an easement, is in the nature of one. It is really a permission or license, express or implied, to use the property of another in a particular manner, or for a particular purpose. Where this permission has led the party to whom it has been given, to treat his own property in a way in which he would not otherwise have treated it …[,] it cannot be recalled to his detriment.

Harkins v. Zamichieli, … 405 A.2d 495, 498 ([Pa. Super.] 1979) (quoting Pierce v. Clellant, … 19 A. 352 ([Pa.] 1890)). Thus, the irrevocable license gives "absolute rights, and protects the licensee in the enjoyment of those rights." Cole v. Ellwood, … 65 A. 678, 680 ([Pa.] 1907). Moreover, "successors-in-title take subject to an irrevocable license if they had notice of the license before the purchase." Kovach, supra (quoting Harkins, supra at 498).

Morning Call, Inc., 761 A.2d at 144 (some internal citations and footnotes omitted).

Based on the foregoing principles, even if we were to assume arguendo that a license was created between the Beckmans and Rite Aid, in order for the license to become irrevocable and binding on their successors-in-title, namely Rattan Trust, there would need to have been an expenditure of money by Rite Aid in reliance on the promise to allow it to use the access point owned

by Rattan Trust. Rite Aid avers that it submitted sufficient, competent evidence to establish that "it expended money on the repair and maintenance of the parking lot in reliance on the Easement Agreement and its right to use the parking lot." Rite Aid's Brief at 40 (unnecessary capitalization omitted).[11] Contrary to Rite Aid's assertion, however, the record is devoid of any evidence that Rite Aid contributed financially to the maintenance or repair of the lot.

As the trial court opined regarding the supposed evidence presented by Rite Aid:

> All but one of the bills for maintenance that are attached to [Jill Beckman's] affidavit … are addressed only to Charles Beckman and refer only to "Family Dollar," [Rattan Trust's] property. Only the earliest of the bills attached (dated October 2001) references the Family Dollar and Rite Aid parking lot.[12] Furthermore, there are no notations on the bills that Mr. Beckman received any

_____

[11] In support of its argument, Rite Aid relies heavily on the affidavit of Jill Beckman, which references emails (copies of which are attached thereto) that she sent to Bruce McIlrath in response to due diligence requests made by Rattan Trust prior to the closing. Attached to the emails are a copy of the Easement Agreement, invoices regarding repair of the parking lot, and the Lease Agreement between the Beckmans and Family Dollar. See Rite Aid's Motion for Summary Judgment, 8/30/19, Exhibit E. To the extent that Rite Aid relies on the Easement Agreement as proof that it contributed financially to the maintenance of the parking lot, we note that the terms of the document are inconsequential, as the Easement Agreement has been declared void ab initio.

[12] The trial court is referring to Baldwin Asphalt Paving Inc.'s Invoice No. 3500, dated October 18, 2001, and addressed solely to Charles Beckman. The job name and description on the invoice references "Family Dollar & Rite Aid." Charles Beckman's signature appears at the bottom of the invoice, indicating that he "inspected and approved" the finished asphalt work. Accompanying the invoice is a copy of a check signed by Charles Beckman, dated October 18, 2001, and payable to "Baldwin Asphalt Paving Inc." for the full amount of the invoice. There is no reference on the invoice to any payment by Rite Aid.

reimbursements from … Rite Aid[,] nor are there any notations that the bills were even submitted to [Rite Aid] for reimbursement.

Most importantly, Rite Aid does not attach any proofs that it paid any portion of the costs of maintenance. No copies of cancelled checks are attached; no copies of bookkeeping records are attached. There is no evidence that suggests that [Rite Aid] actually paid for its portion of the maintenance of its 10 parking spaces, the only part of the lot that it owns.

Supplemental TCO at 2. Based on the foregoing, the trial court found that "[t]here is no basis for a finding that there was any agreement whatsoever regarding sharing the maintenance of the parking lot." Id. We deem the trial court's finding to be well-supported by the record and, thus, we discern no error of law or abuse of discretion.

As Rite Aid failed to establish a genuine issue of material fact, we conclude that the trial court did not commit an error of law or abuse its discretion when it granted Rattan Trust summary judgment. Accordingly, we affirm the December 2, 2019 order granting Rattan Trust's motion for summary judgment, denying Rite Aid's motion for summary judgment, and declaring the Easement Agreement void ab initio.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2020

- 19 -