J-A31009-15

2017 PA Super 26

| | |
|---|---|
| MARY P. PETERSEN, BY AND THROUGH HER ATTORNEY-IN-FACT, KATHLEEN F. MORRISON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KINDRED HEALTHCARE, INC., AND PERSONACARE OF READING, INC., D/B/A KINDRED TRANSITIONAL CARE AND REHABILITATION-WYOMISSING, AND KINDRED NURSING CENTERS EAST, LLC, AND KINDRED HEALTHCARE OPERATING, INC., AND MONIQUE COLE, NHA | |
| Appellants | No. 1567 MDA 2014 |

Appeal from the Order Entered September 5, 2014
In the Court of Common Pleas of Berks County
Civil Division at No(s): 12-26079

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

OPINION BY LAZARUS, J.:                    **FILED FEBRUARY 01, 2017**

Kindred Healthcare, Inc., Personacare of Reading, Inc., d/b/a Kindred Transitional Care and Rehabilitation-Wyomissing, Kindred Nursing Centers East, LLC, Kindred Healthcare Operating, Inc., and Monique Cole, NHA (collectively, "Kindred"), appeal from the order entered in the Court of Common Pleas of Berks County, overruling Kindred's preliminary objections

_____

[*] Retired Senior Judge assigned to the Superior Court.

to the complaint filed by Mary P. Petersen, by and through her attorney-in-fact, Kathleen F. Morrison ("Petersen"). Upon careful review, we affirm.

This action involves claims of negligence on the part of Kindred in relation to care rendered to Petersen during her stay as a patient at a Kindred facility. Petersen filed a complaint on July 5, 2013. Kindred filed preliminary objections on July 26, 2013, seeking, *inter alia*, to enforce an arbitration agreement signed by Petersen's daughter, Darlene Uriarte, pursuant to a power of attorney ("POA") appointing Uriarte as successor agent in the event her sister, Kathleen Morrison, was unwilling or unable to act. Petersen filed a response, in which she asserted that the agreement was "unenforceable, void, unconscionable, and/or a contract of adhesion." Plaintiff's Answer to Preliminary Objections, 8/15/13, at 3. Petersen also claimed that the agreement "was signed under duress or by someone without proper legal authority." ***Id.*** The parties engaged in limited discovery on the issue of arbitration and filed supplemental briefs. Following oral argument, the trial court issued an order on September 8, 2013, overruling Kindred's preliminary objections and directing Kindred to file a response to Petersen's complaint.

This timely appeal follows,[1] in which Kindred raises the following issues for our review:[2]

---

[1] An order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42
*(Footnote Continued Next Page)*

1.   Whether the [t]rial [c]ourt erred in overruling Kindred's preliminary objections seeking to enforce an [a]lternative [d]ispute [r]esolution [a]greement signed by [Petersen's] daughter, Darlene Uriarte, as she had authority to execute the ADR [a]greement pursuant to a written [p]ower of [a]ttorney?

2.   Whether the [t]rial [c]ourt erred by failing to conclude that Ms. Uriarte had the capacity, and, in fact, did have a basic understanding of alternative dispute resolution when she signed the [a]greement?

3.   [Whether t]he [t]rial [c]ourt erred in failing to conclude that by signing various other medical-legal documents on behalf of her mother during her stay at the Kindred facility that [Petersen] is estopped from disavowing the ADR [a]greement?

4.   Whether the [t]rial [c]ourt erred in failing to apply the policies favoring arbitration contained in the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), the Pennsylvania Uniform Arbitration Act ("PUAA"),[3] and extensive case law interpreting same?

Brief of Appellants, at 4.

We begin by noting that our review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.  *Gaffer*, 936 A.2d at 1112.  As contract interpretation is a question of law, our review of the trial court's decision is

_(Footnote Continued)_ _____

Pa.C.S.A. § 7320(a) and Pa.R.A.P. 311(a)(8).  *See Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1110 n.2 (Pa. Super. 2007).

[2] We have renumbered Kindred's issues for ease of disposition.

[3] 42 Pa.C.S.A. §§ 7301-7320.

*de novo* and our scope is plenary. **Id.**, citing **Bucks Orthopaedic Surgery Associates, P.C. v. Ruth**, 925 A.2d 868, 871 (Pa. Super. 2007).

Kindred first claims that the trial court erred in concluding that Petersen's daughter, Darlene Uriarte, lacked authority to execute the arbitration agreement pursuant to Petersen's power of attorney. Specifically, Kindred challenges the court's findings that:  (1) as the named successor agent, Uriarte did not have authority to act on behalf of Petersen until it was determined that the primary agent, Kathleen, was unable or unwilling to act; and (2) the power of attorney document in question did not authorize the agent to enter into ADR agreements on behalf of the principal.

We first address the question of whether Uriarte possessed the authority to act on Petersen's behalf under the POA.  Kindred asserts that the trial court erred in concluding that "before Darlene Uriarte could validly execute the ADR agreement, there must first have been a specific finding that her sister, Kathleen, was unwilling or unable to sign [it]."  Brief of Appellants, at 23.  Kindred argues that Uriarte's deposition testimony demonstrates that she and Kathleen agreed that she (Uriarte) had the authority to execute the documents necessary to admit Petersen into Kindred's facility.  Kindred asserts that Uriarte "presented the POA to Kindred, and represented herself as having authority to act" on Petersen's behalf.  Kindred claims that "the [t]rial [c]ourt's decision would require [Kindred] to make an on-the-spot determination that [Kathleen] was unwilling or unable to sign admissions papers on her [Petersen's] behalf,

despite there being no reason to question [Uriarte's] authority." *Id.* at 24. Kindred also argues that, because Petersen has not repudiated any of the other paperwork signed by Uriarte, she is essentially estopped from disavowing the ADR agreement. Kindred is entitled to no relief.

Petersen did not execute the arbitration agreement herself. Thus, in order for the agreement to be binding up on her, there must have existed at the time of execution an agency relationship between Petersen and Uriarte. Such a relationship cannot be inferred from mere relationship or family ties unattended by conditions, acts or conduct clearly implying an agency. *Walton v. Johnson*, 66 A.3d 782, 787 (Pa. Super. 2013), quoting *Sidle v. Kaufman*, 29 A.2d 77, 81 (Pa. 1942). Rather, an agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. *Walton*, 66 A.3d at 786.

> Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are "proper, usual and necessary" to carry out express agency. Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

*Id.* (citations omitted). The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the

- 5 -

evidence. *Id.*, citing *Volunteer Fire Co. v. Hilltop Oil Co.*, 602 A.2d 1348, 1351 (Pa. Super. 1992).

Moreover, a party dealing with an agent, known by the former to be acting only under an express grant of authority (such as a power of attorney), has a duty to take notice of the nature and extent of the authority conferred. *Fierst v. Commonwealth Land Title Ins. Co.*, 451 A.2d 674, 677 (Pa. 1982), citing *Moore v. Luzerne County*, 105 A. 94, 95 (Pa. 1918). *See also* Restatement (Second) of Agency, § 167 (1958) ("If a person dealing with an agent has notice that the agent's authority is created or described in a writing which is intended for his inspection, he is affected by limitations upon the authority contained in the writing, unless misled by conduct of the principal."). Parties are bound at their own peril to notice limitations upon the grant of authority before them, whether such limitations are prescribed by the grant's own terms or by construction of law. *Fierst*, 451 A.2d at 677. "A person with notice of a limitation of an agent's authority cannot subject the principal to liability upon a transaction with the agent if he should know that the agent is acting improperly." Restatement (Second) of Agency § 166 (1958). Finally, the existence of a limitation upon the authority conferred by a power of attorney must be determined in light of the rule that such powers are to be strictly construed. *See Nuzum v. Spriggs*, 55 A.2d 402, 403 (Pa. 1947).

Here, Uriarte presented Kindred with a copy of Petersen's power of attorney at the time she signed the ADR agreement. By its plain language,

- 6 -

the POA appointed Uriarte as agent only upon the occurrence of a specific contingency, i.e., "[i]n the event [Petersen's] daughter, Kathleen F. Petersen[,] is unwilling or unable to act as . . . Attorney-In-Fact[.]" Durable General Power of Attorney, 7/31/03, at 2. Thus, Uriarte's authority to bind her mother did not arise until her sister, Kathleen, became "unwilling or unable" to act. Having received a copy of Petersen's POA, Kindred had actual notice that Uriarte had authority to act only based on the occurrence of certain conditions. Yet, there is nothing in the record to suggest that Kindred made any attempt to ascertain whether or not Kathleen was "unwilling or unable" to act, nor does the record reflect that Kathleen was, in fact, "unable or unwilling" to act. Kindred simply accepted Uriarte's representation that she possessed the requisite authority to act on behalf of her mother, even though she was named in the document only as successor agent. Contrary to Kindred's assertion that there was "no reason to question Uriarte's authority" under the POA, in fact, Kindred had <u>every</u> reason to question her authority by virtue of the fact that she was only named successor agent in the document. In short, Kindred failed in its obligation to take notice of the nature and extent of the authority conferred upon Uriarte by Petersen's POA. ***Fierst***, ***supra***. Kindred has not demonstrated that Kathleen was "unwilling or unable" to act at the time the ADR agreement was signed. Accordingly, Uriarte lacked authority to bind Petersen pursuant to the POA.

Kindred's agency by estoppel argument also garners it no relief.[4] Kindred maintains that, since Petersen accepted the benefits flowing from the other medical-legal documents signed by Uriarte on her behalf, i.e., the services set forth in the admission agreement, she is now estopped from disavowing the arbitration agreement. Kindred's argument is both flawed and unavailing.

Agency by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was

_____

[4] Kindred appears to conflate the concepts of "agency by estoppel" and "equitable estoppel." Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken. *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 504 (Pa. 1983) (citation omitted). The person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, over a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements. *Id.* Kindred essentially maintains that, since Petersen accepted the benefit flowing from the other agreements Uriarte signed on her behalf, namely the services set forth in the admission agreement, she is estopped to disavow the arbitration agreement simply because she does not wish to arbitrate the instant dispute.

This Court rejected an identical argument in *Washburn v. N. Health Facilities, Inc.*, 121 A.3d 1008 (Pa. Super. 2015). There, we held that a wife who signed an arbitration agreement on behalf of her husband in the absence of a POA or other agency agreement was not equitably estopped from disavowing the agreement. We found that, because the ADR agreement was separate from the admission agreement, and admission was not conditioned upon agreeing to arbitrate, the agreement was not part of the contractual quid pro quo for admission to the facility and its attendant benefits. Likewise, here, the arbitration agreement was separate from the admission agreement, and was not a condition of admission to Kindred's facility. Thus, *Washburn*, is controlling as to Kindred's estoppel argument.

authorized to act on behalf of the principal. *Id.*, citing ***Turnway Corp. v. Soffer***, 336 A.2d 871 (Pa. 1975). The doctrine requires that the principal intentionally or carelessly caused a third party to believe an agency relationship existed, or, knowing that the third party held such a belief, did not take reasonable steps to clarify the facts. **See** Restatement (Second) of Agency, Section 8(B). Additionally, there must be justifiable reliance by the third party. ***Turnway Corp. v. Soffer***, 336 A.2d 871, 876 (Pa. 1975).

To prevail on a claim of agency by estoppel on the issue of authority to sign the ADR Agreement, Kindred must prove by a fair preponderance of the evidence that either: (1) there was some carelessness or negligence on Petersen's part that allowed Kindred to rely on the POA or (2) Petersen did not take reasonable steps, knowing that Kindred was relying on the POA, to correct its belief. ***Walton***, 66 A.3d at 788–89.

Here, Kindred's argument on this issue is misplaced. While agency by estoppel is essentially a determination of agency by after-the-fact actions by the *principal*, ***Walton***, 66 A.3d at 788, Kindred focuses its argument on the actions of *Uriarte*. **See** Brief of Appellants, at 25 ("Manifestations were made by the agent, Darlene Uriarte, to a third person, and [a] reasonable belief was formed by [Kindred] that the alleged agent was authorized to bind the principal."). As such, its claim is fatally flawed.

In any event, Kindred offered no evidence to demonstrate that Petersen acted negligently or had any reason to believe that Kindred was acting upon a mistaken belief as to Uriarte's authority – or lack thereof –

under the POA. **See Walton**, **supra**. Petersen had no knowledge of the circumstances surrounding the execution of the ADR agreement. She was not present at its execution, and Uriarte did not show the ADR agreement to her after the fact. **See** Darlene Uriarte Deposition, 5/7/14, at 49. Moreover, Uriarte testified that Petersen "wouldn't have grasped" much of what was contained in the document. **Id.** at 49-50. Kindred never presented the ADR agreement to Petersen for ratification and there is no basis to believe that she knew or should have known about the agreement. Because it cannot be shown that Petersen was negligent in failing to correct Kindred's false assumptions regarding Uriarte's lack of authority under the POA, Kindred's agency by estoppel claim must fail.

For the foregoing reasons, we conclude that Uriarte lacked the authority to execute the ADR agreement on Petersen's behalf, and that Petersen is not legally bound by the agreement. Having concluded that no valid agreement to arbitrate exists, we need not address Kindred's remaining claims.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/2017

- 10 -