J-A01030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TERRANCE M. BRENNAN AND GLADYS A. BRENNAN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| NVR, INC., T/A NV HOMES, | |
| Appellant | No. 2256 EDA 2017 |

Appeal from the Order Entered June 20, 2017
in the Court of Common Pleas of Chester County
Civil Division at No.: 2016-10546-TT

BEFORE:  LAZARUS, J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                              **FILED APRIL 27, 2018**

Appellant, NVR, Inc., t/a NV Homes, appeals from the trial court's June 20, 2017 order denying its preliminary objection in the nature of a motion to compel arbitration.  We affirm.

We take the underlying facts and procedural history in this matter from the trial court's September 1, 2017 opinion and our independent review of the certified record.

> [Appellees'] Complaint avers the following.  On November 17, 2014[,] the parties executed a Pennsylvania Purchase Agreement (Purchase Agreement) related to the construction of [Appellees'] home.  The Purchase Agreement did not contain an arbitration provision. Section 6 of the Purchase Agreement states in relevant part: "You have received a copy of Seller's limited warranty (the "Limited Warranty") prior to execution of this

---

[*] Retired Senior Judge assigned to the Superior Court.

Agreement and You agree to accept this warranty as the sole warranty being given to Purchaser. THE LIMITED WARRANTY OF THIS AGREEMENT IS THE ONLY WARRANTY BY SELLER APPLICABLE TO THE PROPERTY. . . ." (emphasis in original). [Appellees] assert that they were not provided with this Limited Warranty prior to executing the Purchase Agreement or at settlement. At some point after settlement, [Appellees] were provided with a Limited Warranty that related to the construction of condominiums. According to [Appellees], nine months after settlement, [Appellant] provided them with the "correct" Limited Warranty. The Limited Warranty contained the following provision: "THE LIMITED WARRANTY PROVIDED FOR IN THIS BOOKLET INCLUDES BINDING ARBITRATION IN THE EVENT OF A DISPUTE WHICH IS NOT SETTLED BETWEEN YOU AND THE BUILDER. . . ." (emphasis in original). . . .

\* \* \*

. . .[Appellees] assert the following with regard to the construction of the house. Prior to settlement and before the installation of the exterior siding, stone veneer and drywall, [Appellees] retained Peach Inspections to conduct an inspection. Peach Inspections identified and photographed "significant defects and sloppy installation in the house-wrap, flashing and window installations that would allow water intrusion and included this information in an inspection report." [Appellees] provided this report to [Appellant's] Project Manager Kevin Hawley. Mr. Hawley promised to correct the identified issues before settlement. [Appellees] also requested that Mr. Hawley photograph the completed corrections. Subsequently, Mr. Hawley represented to [Appellees] that the problems identified by Peach Inspections had been corrected; however, he had not had time to photograph those corrections. [Appellees] were concerned about completing settlement; however, Mr. Hawley again reassured them that the issues had been resolved. By this time, it was impossible for [Appellees] to independently verify that the issues had been corrected since the exterior siding, stone veneer and drywall had been installed. Based on Mr. Hawley's representations, [Appellees] completed settlement. However, after settlement, [Appellees] discovered significant defects such as water leaks around the windows and doors as well as the ceiling, basement and garage. Four months after settlement, [Appellees] retained Peach Inspections to return to the property. Peach Inspection removed the siding and found the defects originally identified to

be in the same condition they were in at the time of the original inspection.

(Trial Court Opinion, 9/01/17, at 2-4).

Appellees filed the instant complaint on November 9, 2016, alleging counts for fraudulent misrepresentation, and violation of Pennsylvania's unfair trade practices and consumer protection law. *See* 73 P.S. §§ 201-1, *et seq.* Appellant filed preliminary objections in the nature of a motion to compel arbitration on February 7, 2017. On June 20, 2017, the trial court overruled the preliminary objections and directed Appellant to file an answer. The instant, timely appeal followed. On July 14, 2017, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed its Rule 1925(b) statement on August 1, 2017. *See id.* On September 1, 2017, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

> I. Is this appeal proper, where it is taken from an order overruling preliminary objections seeking to enforce the arbitration clause contained in the parties' contract?
>
> II. Did the trial court exceed its discretion in declining to enforce the parties' arbitration agreement, where that agreement was valid, enforceable and this dispute is within the scope of that provision?

(Appellant's Brief, at 2).

In its first issue, Appellant argues that this Court has jurisdiction over the appeal. (See Appellant's Brief, at 2, 11). Appellees do not challenge this

Court's jurisdiction over the appeal. (See Appellees' Brief, at 7-18). It is long settled that an order denying a motion to compel arbitration is immediately appealable; therefore, we need not further address this issue. *See* 42 Pa. C.S.A. § 7320(a)(1); Pa.R.A.P. 311(a)(8).

In its second issue, Appellant argues that the trial court erred in declining to enforce the arbitration agreement. (*See* Appellant's Brief, at 12-22). We disagree.

Our scope and standard of review are settled.

> We begin by noting that our review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. As contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope is plenary.

*Petersen v. Kindred Healthcare, Inc.*, 155 A.3d 641, 644 (Pa. Super. 2017) (citations omitted).

Pennsylvania law favors settlement of disputes by arbitration. *See Provenzano v. Ohio Valley General Hosp.*, 121 A.3d 1085, 1096 (Pa. Super. 2015). When deciding whether a trial court should have compelled arbitration, we employ a two-part test: (1) does a valid agreement to arbitrate exist, and (2) is the dispute within the scope of the agreement. *See Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa. Super. 2004). "[I]f a valid arbitration agreement exists between the parties and [the plaintiff's] claim is within the scope of the agreement, the controversy must be submitted to

- 4 -

arbitration." ***Highmark Inc. v. Hospital Service Ass'n. of Northeastern Pennsylvania***, 785 A.2d 93, 98 (Pa. Super. 2001), *appeal denied*, 797 A.2d 914 (Pa. 2002). "[T]he scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." ***Henning v. State Farm Mut. Auto. Ins. Co.***, 795 A.2d 994, 996 (Pa. Super. 2002), *appeal denied*, 808 A.2d 572 (Pa. 2002) (citations and internal quotation marks omitted).

Here, the trial court found both that there was no valid agreement to arbitrate and that, even if there was, the instant matter was not within the scope of the arbitration agreement. (***See*** Trial Ct. Op., at 3-4). After a thorough review of the certified record, we agree.

As the trial court correctly discussed, (***see id.*** at 2-3), the relevant contract between the parties is the Purchase Agreement. The Purchase Agreement does not contain an arbitration clause. (***See*** Purchase Agreement, 11/17/14, at 1-11). The section of the Purchase Agreement entitled "Claims and Disputes" does not mention arbitration. (***See id.*** at 4 ¶ 13). Again, the trial court rightly found that the only mention of arbitration occurs within the Limited Warranty, contained within the Homeowner's Manual. (***See*** Trial Ct. Op., at 3-4; Defendant's Preliminary Objections, 2/07/17, Exhibit 1 at 61-62 ¶ 12). The Limited Warranty, which was unsigned, is not incorporated into the Purchase Agreement. (***See*** Purchase Agreement, at 6 ¶¶ 27-28). While it is mentioned in the Purchase Agreement, (***see id.*** at 2 ¶ 6), the Purchase

Agreement specifically mandated that Appellant provide a copy of the Limited Warranty to Appellees prior to the execution of the Purchase Agreement. (*See id.*). Appellant does not dispute that it failed to do so and that, when it did supply a copy of the Limited Warranty to Appellees, it provided the wrong one, only providing the correct Limited Warranty many months after the signing of the Purchase Agreement. (*See* Appellant's Brief, at 5; Defendant's Preliminary Objections, at 2-3). Under these circumstances, we cannot say that "both parties have manifested an intent to be bound by the terms of the [Limited Warranty.]" *Johnston the Florist, Inc. v. Tedco Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. 1995). Thus, we find that the trial court neither abused its discretion nor committed an error of law in finding that there was no valid agreement to arbitrate. *See Quiles v. Financial Exchange Co.*, 879 A.2d 281, 286-87 (Pa. Super. 2005) (affirming trial court decision that there was no valid agreement to arbitrate where, although arbitration agreement was contained within employee handbook, record demonstrated that it was not provided to employee at time of hiring despite employee's signature on document saying she had read and received handbook).

Moreover, even if there was a valid agreement to arbitrate, we agree with the trial court that the instant matter is not within the scope of the arbitration provision. (*See* Trial Ct. Op., at 3-4). As the trial court stated:

> The booklet containing the Limited Warranty as well as the Limited Warranty itself describes the various systems in the house ([e.g.] HVAC, structural components etc.), maintenance requirements as well as [Appellant's] liability for repairing damage

to same. However, as detailed above, the instant action is not based on the improper construction of the home, but rather [Appellant's] representative's fraudulent misrepresentations. Therefore, we found that [Appellees'] causes of action did not fall within the arbitration provision. . . .

(*Id.* at 4). We have thoroughly reviewed the record. Appellees' complaint specifically alleges that Appellant's employee fraudulently misrepresented that he had undertaken the repairs requested by Appellees but had not actually done so and other violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Laws. (*See* Complaint, 11/09/16, at 6-8). We see nothing in the Limited Warranty or the arbitration clause that covers these types of claims. (*See* Limited Warranty, at 61-62 ¶ 12; *see also id.* at 59-63). Thus, the trial court neither abused its discretion nor committed an error of law in finding that the instant matter was not within the scope of the arbitration agreement. *See Henning*, *supra* at 996-97 (holding that limited arbitration clause only covers those disputes within its terms).

Accordingly, for the reasons discussed above, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/18

- 7 -