J-A01023-24
J-A01024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JACOB SINGER AS TRUSTEE OF THE MICHAEL SINGER 2005 GST EXEMPT TRUST FOR JACOB SINGER | : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| DAVID SINGER, MICHAEL SINGER, INC. T/A MICHAEL SINGER REAL ESTATE AND MAZARS USA LLP AND KIRK ELDRIDGE | | No. 767 EDA 2023 |
| APPEAL OF: MAZARS USA LLP AND KIRK ELDRIDGE | | |

Appeal from the Order Entered February 22, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  220701119

| | | |
|---|---|---|
| JACOB SINGER AS TRUSTEE OF THE MICHAEL SINGER 2005 GST EXEMPT TRUST FOR JACOB SINGER | : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | No. 1225 EDA 2023 |
| DAVID SINGER, MICHAEL SINGER, INC. T/A MICHAEL SINGER REAL ESTATE AND MAZARS USA LLP AND KIRK ELDRIDGE | | |

Appeal from the Order Entered April 12, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  220701119

J-A01023-24
J-A01024-24

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED FEBRUARY 20, 2024**

These two related appeals, which we consolidate *sua sponte*, involve the 20-count complaint Jacob Singer filed against David Singer, Michael Singer, Inc. ("MSI") and Kirk Eldridge and Mazars USA LLP (last two parties collectively, "Mazars"). In the complaint, Jacob Singer alleged mismanagement of the Michael Singer 2005 GST Exempt Trust for Jacob Singer ("the Trust") and sought transfer of the management of the Trust's assets from David Singer and MSI to himself. Shortly after filing the complaint, Jacob Singer filed an emergency petition for injunctive relief in which he essentially requested the Philadelphia County Court of Common Pleas to enjoin David Singer and MSI from continuing to manage the assets of the Trust and to order David Singer, MSI and Mazars to produce financial documents related to the Trust. The trial court denied that petition, and Jacob Singer challenges that denial in the appeal docketed at 1225 EDA 2024.

Meanwhile, in response to the complaint, Mazars filed preliminary objections seeking to compel Jacob Singer to arbitrate his claims against Mazars. The trial court entered an order overruling the preliminary objections, and Mazars appeals that order in the appeal docketed at 767 EDA 2024. We affirm both orders.

---

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

As an initial matter, we note that we have jurisdiction over these appeals even though they seek relief from interlocutory orders. Our Rules of Appellate Procedure specifically provide that we have jurisdiction over appeals from interlocutory orders denying injunctive relief, such as the order denying Jacob Singer's request for an emergency preliminary injunction. *See* Pa.R.A.P. 311(a)(4). We also have jurisdiction over appeals from interlocutory orders overruling preliminary objections seeking to compel arbitration, such as the ones filed by Mazars and overruled by the trial court. *See* Pa.R.A.P. 311(a)(8); 42 Pa. C.S.A. § 7320(a)(1); ***Davis v. Ctr. Mgmt. Grp. LLC***, 192 A.3d 173, 180-181 (Pa. Super. 2018).

While we have jurisdiction over the appeals from these preliminary orders, we note that because of the preliminary stage of the proceedings, the trial court primarily gleaned the background underlying these appeals from the pleadings. We borrow liberally from the trial court's recitation of that background, which is supported by our independent review of the record.

In 2005, Michael Singer, Jacob Singer's father and a real estate developer, established the Trust for the benefit of Jacob Singer and his family. Jacob Singer is the Trustee of the Trust, which contains millions of dollars in real estate holdings. In 2022, and upon the retirement of his father, Jacob Singer "began to take a more hands-on approach with the assets in the [Trust]." Trial Court Opinion, 7/12/2023, at 2. He discovered that MSI, a

corporate entity owned by Michael Singer and Jacob Singer's brother, David Singer, had been managing the assets in the Trust.

Upon this discovery, Jacob Singer asked David Singer to turn over the management of the Trust's assets to him, along with the management and financial documents pertaining to the assets. David Singer allegedly refused. Accordingly, Jacob Singer "sought assistance in obtaining financial information concerning the Trust assets from [Mazars], which was an accounting firm that prepared yearly income taxes for the Trust." Complaint ¶ 19. Mazars also allegedly refused to provide this information.

Jacob Singer filed a complaint against David Singer, MSI and Mazars on July 14, 2022. In the complaint, Jacob Singer made general allegations that David Singer and MSI were mismanaging the Trust's real estate holdings. He alleged he had inspected some of the properties held by the Trust, without specifying which properties, and that those properties he inspected were in disrepair. He also broadly alleged that David Singer and MSI commingled rental payments on Trust properties with MSI accounts, that "millions of dollars" of rent generated from the Trust properties were unaccounted for and that David Singer and MSI had transferred rights and interests in the Trust assets without Jacob Singer's permission.

Jacob Singer also alleged Mazars improperly withheld Trust-related documents from him and acted in concert with David Singer and MSI to fraudulently transfer assets of the Trust. In total, the complaint contained six

counts each against David Singer and MSI: fraudulent conveyance, fraud, conversion, accounting, replevin, and conspiracy and four counts each against Kirk Eldridge and Mazars: conversion, accounting, replevin, and conspiracy. Jacob Singer sought the immediate transfer of the management of the Trust's assets to him as well as the production of documents related to the management of the Trust.

As noted above, in the wake of filing his complaint, Jacob Singer filed an emergency petition for preliminary injunctive relief on July 22, 2022. In essence, the petition contained the same general allegations of mismanagement as those in the complaint. Based on those allegations, Jacob Singer sought to have the trial court grant emergency injunctive relief in the form of enjoining David Singer and MSI from managing the Trust's assets and prohibiting them from any future involvement with the Trust's real estate properties. He also asked that the court compel David Singer, MSI and Mazars to turn over financial and tax documents related to the Trust. Jacob Singer summarily asserted that he would suffer irreparable and immediate harm if the trial court failed to order such emergency injunctive relief.

Meanwhile, in response to the complaint, Mazars filed preliminary objections seeking to compel Jacob Singer to arbitrate his claims against Mazars. According to Mazars, such arbitration was required by the arbitration clause in Mazars' engagement letter governing the preparation of 2021 tax returns for several entities, including the Trust.

The trial court denied Mazars' preliminary objections on February 22, 2023. It also denied Jacob Singer's petition for injunctive relief on April 12, 2023, concluding that Jacob Singer had failed to prove immediate and irreparable harm that could not adequately be compensated by damages. Jacob Singer and Mazars filed separate notices of appeal, with Jacob Singer appealing the order denying emergency injunctive relief and Mazars appealing the order overruling its preliminary injunctions.

Both Jacob Singer and Mazars complied with the trial court's order directing them to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a single opinion for the two appeals, urging this Court to affirm both its order overruling Mazars' preliminary objections and its order denying Jacob Singer's request for a preliminary injunction.

Considering the circumstances underlying these two appeals, we find it judicious to consolidate the matters *sua sponte*. However, we will address each appeal separately. We turn first to Jacob Singer's appeal challenging the court's denial of his emergency petition for injunctive relief.

In his first claim, Jacob Singer alleges the trial court erred by denying his request for an emergency preliminary injunction on the basis that he had not shown an irreparable and immediate injury. This argument lacks merit.

Our review of an order refusing or granting a preliminary injunction is highly deferential and limited to whether the trial court abused its discretion. ***See Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.***,

828 A.2d 995, 1000 (Pa. 2003). We will affirm a trial court's order refusing or granting a preliminary injunction if there are "any apparently reasonable grounds" on the record which support the disposition. *Id.* at 1001.

The granting of a preliminary injunction is considered an extraordinary remedy meant to be granted only when the party seeking the injunction has shown a clear right to the relief sought. *See Soja v. Factoryville Sportsmen's Club*, 522 A.2d 1129, 1131 (Pa. Super. 1987). The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm which might occur before the merits of the case can be determined. *See id.*

The proponent of a preliminary injunction faces a heavy burden of persuasion and must establish all six of the "essential prerequisites" for the granting of a preliminary injunction. *See Summit Town Centre*, 828 A.2d at 1001 (listing all six of these "essential prerequisites"). The first of those prerequisites requires a party seeking a preliminary injunction to show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. *See id.* If the party fails to establish this prerequisite, or any one of the essential prerequisites, there is no need for the trial court to address the other five prerequisites. *See id.*

Here, the trial court denied Jacob Singer's petition for an emergency preliminary injunction because he failed to show an immediate and irreparable

harm that could not be compensated by damages. In support, the trial court

explained:

> [Jacob Singer] has not alleged any immediate harm. The [Trust] has existed since 2005 and has been managed since then by MSI. During those seventeen years, [Jacob Singer] does not appear to have had any issue with how the company oversaw the [Trust's] assets. While [he] alleges that it was his renewed interest in the [Trust] in 2022 that led him to uncover MSI's and David Singer's alleged malfeasance, it is difficult to tell from [Jacob Singer's] broad and conclusory allegations what [MSI and David Singer] have actually done to mismanage the assets. Lacking in the Complaint and Petition is the necessary concrete evidence of an irreparable harm. Accepting [Jacob Singer's] allegations at face value, there is nothing averred in the Complaint that a simple accounting could not recompense – certainly nothing so urgent that would require recourse to the extreme remedy of an injunction.

Trial Court Opinion, 7/12/2023, at 5.

The trial court proceeded to conclude that Jacob Singer had also failed

to show an injury that was irreparable. To that end, the court noted that "if

the injunction was not granted, MSI would continue to manage the [Trust's]

assets, as it has done without apparent incident for the past seventeen years

– [Jacob Singer's] threadbare recitals of mismanagement notwithstanding."

*Id.* at 5. The court also observed that the abuses alleged, such as the disrepair

of the Trust's properties and commingling of rents and other payments, were

easily calculable and compensable by money damages if found to have

occurred. *See id.*

We see no abuse of discretion in the court's conclusion that Jacob

Singer's nonspecific accusations of mismanagement of the Trust's real estate

properties during the years-long management of those properties by MSI do not establish immediate and irreparable harm in the absence of injunctive relief. **See Summit Towne Centre**, 828 A.2d at 1002 (stating that a party seeking a preliminary injunction must provide concrete evidence of harm to establish the immediate and irreparable harm prerequisite).

Jacob Singer baldly alleges, however, that the loss of control of real property constitutes an irreparable harm and the trial court erred by failing to find such irreparable harm here. We disagree.

In the first place, while an injunction can be an appropriate remedy when real property rights are concerned, the blanket statement made by Jacob Singer ignores the fact that the power to grant or refuse an injunction "rests in the sound discretion of the court under the circumstances and the facts of the particular case." **Rick v. Cramp**, 53 A.2d 84, 88 (Pa. 1947).

In any event, we fail to see how the cases cited by Jacob Singer to support his argument, **Peters v. Davis**, 231 A.2d 748 (Pa. 1967) and **New Eastwick Corp. v. Philadelphia Builders Eastwick Corp.**, 241 A.2d 766 (Pa. 1968), compel a conclusion that the trial court abused its discretion by denying injunctive relief in the circumstances of this case. **Peters** considered whether a party was entitled to an injunction ordering the removal of the portions of a dwelling that were intentionally and deliberately built in violation of express building line restrictions contained in a deed. **See Peters**, 231 A.2d at 751-752. This is not the situation here.

***New Eastwick Corp***. also dealt with an injunction in a context different from the one presented by this appeal. There, our Supreme Court held that New Eastwick Corporation was entitled to an injunction prohibiting Philadelphia Builders Eastwick Corporation from interfering with New Eastwick Corporation's ownership rights to an urban renewal area in Philadelphia after an option for Philadelphia Builders Eastwick Corporation to purchase part of the urban renewal area had expired. ***See New Eastwick Corp***., 241 A.2d at 767-768, 771. The Court found irreparable harm under the circumstances of that case, far different from those here, and specifically on the basis of the "unique and intrinsic value" of the land in question. ***Id.*** at 770. Given the marked difference between the cited cases and the instant one, this argument does not provide any basis for relief.

Jacob Singer also summarily asserts that the misappropriation of funds and the attempt to conceal that misappropriation, which he broadly alleges David Singer and MSI engaged in, demonstrates irreparable injury. This argument also does not warrant any relief.

We first note that, in making this assertion, Jacon Singer does not explain how he could not be compensated by damages for the allegedly misappropriated funds by David Singer and MSI. ***See Summit Town Centre***, 828 A.2d at 1001 (stating that a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages). Instead, he cites

to a string of cases without meaningfully discussing how these cases support a finding of irreparable harm or the granting of a preliminary injunction in the instant case. Because of the lack of legal argument, this issue is waived for appellate purposes. *See Commonwealth v. Miller*, 212 A.3d 1114, 1131 (Pa. Super. 2019) (stating that an appellant waives a claim when he fails to properly develop that claim, including citation to relevant legal authority and a meaningful discussion of how that authority supports his claim). Even if this claim were not waived for lack of development, we fail to see how the cases cited by Jacob Singer, all with circumstances readily distinguishable from those here, require us to find trial court error in the case at hand.

We also recognize that in his reply brief, Jacob Singer argues for the first time that he was entitled to an emergency preliminary injunction because David Singer and MSI are violating the law in a number of ways and these violations of the law create *per se* irreparable injury. This is a new argument, and therefore outside the proper scope of a reply brief. *See* Pa.R.A.P. 2113; *Commonwealth v. Williams*, 909 A.2d 383, 386 n.6 (Pa. Super. 2006).[1] As such, it is improper for us to address it.

_____

[1] "An appellant . . . has a general right to file a reply brief. The scope of the reply brief is limited, however, in that such brief may only address matters raised by appellee and not previously addressed in appellant's brief. *See* Note, Pa.R.A.P. 2113

Based on the above, we discern no abuse of discretion in the trial court's denial of a preliminary injunction and instead find there are apparently reasonable grounds for that denial. No relief is due.

In his second claim, Jacob Singer asserts the trial court improperly denied his emergency petition for injunctive relief without first holding a hearing. This claim also fails.

We find, as an initial matter, that this claim is waived. While Jacob Singer summarily complains in his initial brief that the trial court should have first scheduled and held a hearing before denying his emergency petition for an injunction, he cites to absolutely no legal authority to support this claim. It is waived for that reason. **See Miller**, 212 A.3d at 1131 (stating that a claim that fails to cite to and discuss supporting legal authority is waived pursuant to Pa.R.A.P. 2119). Even if this claim were not waived, we find no error on the part of the trial court.

Pa.R.C.P. 1531 governs injunctions. Jacob Singer ultimately cites to Rule 1531 for the first time in his reply brief in response to David Singer and MSI's argument that the Rule did not require the trial court to hold a hearing before denying injunctive relief. Jacob Singer counters that the trial court was required to hold a hearing under Rule 1531. To the extent this argument is properly before us, **see Commonwealth v. Fahy**, 737 A.2d 214, 218 n.8 (Pa. 1999) (stating "a reply brief cannot be a vehicle to argue issues raised

but inadequately developed in [the] appellant's original brief"), it provides no basis for relief.

Rule 1531 provides in pertinent part:

A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof of which the court may require.

Pa.R.C.P. 1531(a).

As David Singer and MSI point out, the trial court did not issue a preliminary injunction here, instead denying the petition for injunctive relief on the basis that Jacob Singer had not established the requisite immediate and irreparable harm. They assert that under Rule 1531, "it is within the trial court's discretion to conduct a hearing or not if the trial court is going to deny the preliminary injunction." Appellees' Brief at 50. To their point, this Court has stated that "there is no absolute duty on the court to grant an evidentiary hearing on an application for a preliminary injunction; it is a matter for the discretion of the trial court" and the decision to forego a hearing will be reversed only where there is an abuse of discretion. ***Franklin Decorators, Inc. v. Hende-Jon Furniture Showrooms, Inc.***, 489 A.2d 246, 247 (Pa. Super. 1985). Jacob Singer does not explain how the trial court committed

such an abuse of discretion here, instead merely offering conclusory and general allegations that it did so. *See* Appellants' Brief at 38-39; Appellants' Reply Brief at 7. It is clear that Rule 1531(a) gives discretion to the trial court in determining whether a hearing is to be scheduled:

> In determining whether . . . a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.

Pa.R.C.P. No. 1531. Accordingly, even if this claim were not waived, no relief would be due.

In his third and final issue, Jacob Singer argues the court erred by failing to grant injunctive relief "compelling [David Singer and MSI] to produce requested financial information in response to [his] motion to compel discovery after the court erroneously determined the financial information could be obtained through [the] normal discovery [process]." Appellant's Brief at 39. This final claim also fails.

In the first instance, Jacob Singer once again does not cite to any legal authority in support of his claim, and it is once again waived for that reason. *See Miller*, 212 A.3d at 1131. Moreover, we question whether we have jurisdiction over this claim. As David Singer and MSI point out, "Although it is undisputed that [this] Court has jurisdiction to review the trial court's denial of [Jacob Singer's] request for a preliminary injunction, [Jacob Singer] improperly raises [claims asking this Court to review the trial court's discovery

- 14 -

rulings] under the guise of a preliminary injunction appeal." Appellees' Brief at 53.

Even if we have jurisdiction over this claim, and even if it were not waived, Jacob Singer completely fails to explain how granting a preliminary injunction compelling the transfer of financial documents long held by one entity to him would do anything but disturb the status quo, rather than maintain it. *See Soja,* 522 A.2d at 1131 (stating the purpose of a preliminary injunction is to preserve the status quo). We can see no reason why the long established discovery process under the rules of civil procedure would not be sufficient.

As we conclude Jacob Singer's claims challenging the court's denial of injunctive relief are either waived, meritless or both, we affirm the trial court's order denying Jacob Singer's emergency petition for a preliminary injunction.

In the second appeal in this consolidated case, Mazars appeals the trial court's order overruling its preliminary objections based on improper venue. Mazars argues Jacob Singer is required to arbitrate his claims against Mazars, and therefore the trial court erred by not dismissing those claims and sending those claims to arbitration. We also find no relief is due in this second appeal.

In general, our review of a trial court's order overruling preliminary objections seeking to compel arbitration is limited to determining whether the court's findings are supported by substantial evidence and whether the trial court abused its discretion. *See Davis*, 192 A.3d at 180; *Lugo v. Farmers*

***Pride, Inc.*** 967 A.2d 963, 970 (Pa. Super. 2009) (this Court generally reviews an order overruling preliminary objections based upon improper venue for an abuse of discretion or legal error).

Here, as noted above, Jacob Singer filed a complaint against Mazars, an accounting firm which had previously prepared tax returns for the Trust. The complaint alleged, among other things, that Mazars had failed to turn over requested financial documents related to the Trust and was improperly interfering with Jacob Singer's management of the real estate holdings of the Trust.

Mazars filed preliminary objections, asserting, *inter alia*, that Jacob Singer was required to arbitrate his claims against Mazars pursuant to an engagement letter dated December 16, 2021, governing Mazars' preparation of the 2021 tax return for entities managed by MSI, including the Trust.[2] That letter is addressed to David Singer and MSI and signed by David Singer only. It also contained a provision requiring any controversies arising out of the work performed by Mazars to be adjudicated by mediation and then arbitration.

The trial court overruled the preliminary objections. It explained in its Rule 1925(a) opinion that Mazars had not established that there was a valid

---

[2] When resolving preliminary objections seeking to compel arbitration, the trial court may look to additional evidence outside of the complaint. ***See Davis***, 192 A.3d at 183; Pa.R.C.P. 1028 (c)(2).

agreement to arbitrate between Jacob Singer and Mazars. Mazars appealed, and it raises the single issue on appeal that the trial court erred by reaching this conclusion. We disagree.

When a trial court considers whether it should compel a civil action to be sent to arbitration, it must determine: (1) whether a valid agreement to arbitrate exists and if so, (2) whether the dispute falls within the scope of that agreement. **See Davis**, 192 A.3d at 180. Agreements to arbitrate will only be upheld where it is clear the parties have clearly and unmistakably agreed to arbitrate. **See Quiles v. Financial Exchange Co**., 879 A.2d 281, 287 (Pa. Super. 2005).

Here, there is no dispute that the engagement letter stated that Mazars had been retained to provide tax returns for the year 2021 for entitles listed in an exhibit attached to the letter, and that the Trust is one of the listed entities. Nor is there any dispute that this letter contained an agreement to arbitrate. At the same time, there is also no dispute that the engagement letter is addressed to David Singer and MSI and signed only by David Singer. There is no dispute, then, that Jacob Singer did not sign this letter which contained the agreement to arbitrate. Accordingly, as the trial court astutely noted, the question becomes whether David Singer or MSI had the authority to bind the Trust to the agreement to arbitrate through an agency relationship. **See Traver v. Reliant Senior Care Holdings, Inc.** 228 A.3d 280, 286 (Pa. Super. 2020) (stating that even if a party does not sign an arbitration

agreement, he may be compelled to arbitrate under that agreement based on principles of agency).

In Pennsylvania, an agency relationship can be established in one of four ways. ***See McIlwain v. Saber Healthcare Group, Inc.***, LLC, 208 A.3d 478, 485 (Pa. Super. 2019). First, there can be express authority, which exists when the principal explicitly states the agent has the authority to act on his behalf. ***See id.*** Second, there is implied authority, which exists where the agent's actions are "proper, usual and necessary" to carry out the granting of express agency. ***Id.*** (citation omitted). Third is apparent agency, which exists where the principal causes people with whom the alleged agent deals to believe the principal has granted the agent authority to act. ***See id.*** Fourth and finally, there is agency by estoppel, which occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal. ***See id.***

Here, the trial court found there was no agency relationship between Jacob Singer and Mazars. In support, it explained:

> [T]here is no evidence establishing the authority, if any, that David Singer and/or MSI were operating under when they attempted to bind [the Trust] to the terms of Mazars' engagement letter. Indeed, the nature of that authority goes to the essence of this case. Mazars does not point to any provisions of [the Trust] agreement nor any other documents authorizing David Singer and/or MSI to bind Jacob Singer or [the Trust] to arbitrate their disputes with Mazars. Without such authority, and without any arbitration agreement signed by Jacob Singer, the court cannot order Jacob Singer and [the Trust] to arbitration in this matter.

Trial Court Opinion, 7/12/2023, at 7.

- 18 -

We see no error in the court's determination that Mazars had not shown that an agency relationship existed between Jacob Singer and David Singer or MSI so as to bind him or the Trust to the engagement letter containing the arbitration agreement. As the trial court indicated, and Jacob Singer highlights, Mazars did not produce any evidence showing Jacob Singer gave express authority to David Singer to sign the engagement letter on the Trust's behalf or to bind the Trust to arbitrate any disputes with Mazars. *See Traver*, 228 A.3d at 287 (stating that express authority only exists where the principal deliberately and specifically grants authority to the agent as to certain matters). We reject out of hand Mazars' contention that there was express authority because Jacob Singer did not produce any evidence that he had not expressly given such authority. Such an argument turns the burden of proof to establish agency on its head. *See Petersen v. Kindred Healthcare, Inc*., 155 A.3d 641, 645 (Pa. Super. 2017) (stating that the party asserting the existence of an agency relationship bears the burden of proof). As such, we see no error in the court's conclusion that Mazars did not establish either express authority or implied authority, which flows from the principal's grant of express authority.

Mazars argues, however, that David Singer and MSI had apparent authority to act on Jacob Singer and the Trust's behalf and that agency by estoppel applies to Jacob Singer and the Trust. In support of both contentions, Mazars repeatedly emphasizes that Jacob Singer was aware over the years

that Mazars was preparing tax returns for the Trust and never represented to Mazars that it was not authorized to do so. According to Mazars, Jacob Singer did not reject or renounce Mazar's services until his May 2022 letter seeking to terminate Mazars' services for the Trust. Mazars maintains this course of conduct led it to reasonably believe David Singer and MSI had the authority to engage Mazars on behalf of the Trust and Jacob Singer. This claim does not warrant relief.

First, as Jacob Singer points out, Mazars does not allege that Jacob Singer used David Singer or MSI for tax services in the past, but rather used Mazars. Jacob Singer does not dispute that he used Mazars to prepare the tax returns for the Trust in the past. Instead, he essentially argues that the missing link in Mazars' argument is how his history of using Mazars to prepare the Trust's tax returns shows that David Singer or MSI had apparent authority to bind the Trust to arbitration if a dispute arose. We agree.

We note that Mazars has not pointed to any documents regarding the preparation of prior years' tax returns for the Trust that identify the involvement of David Singer or MSI in the preparation of those returns. Nor does it point to any documents regarding the preparation of the past tax returns that contained arbitration agreements which specifically bound the Trust to arbitration for disputes arising from the preparation of those returns. Under these circumstances, we agree that Mazars has failed to establish that the history of Jacob Singer using Mazars to prepare tax returns for the Trust

translated into a reasonable belief that David Singer and MSI had the apparent authority to bind the Trust to an arbitration agreement in the 2021 engagement letter. ***See id.***

As for Mazars' agency by estoppel argument, we add that agency by estoppel is "essentially a determination of agency by after-the-fact actions by the principal." ***Id.*** at 648. Mazars argues the 2021 engagement letter binds the Trust to arbitration, but it points to actions taken by Jacob Singer before the letter's execution. It does not point to any after-the-fact actions which intentionally or carelessly caused Mazars to believe an agency relationship existed and that Jacob Singers failed to take steps to clarify no such relationship existed. ***See id.*** (providing agency by estoppel doctrine requires principal to intentionally or carelessly cause third party to believe an agency relationship existed or, knowing the third party held such a belief, did not take steps to clarify the facts).

Based on all the above, we see no error in the trial court's conclusion that Mazars failed to show David Singer and MSI had the authority to execute the arbitration agreement on Jacob Singer's behalf and therefore that no valid agreement to arbitrate disputes exists between Jacob Singer and Mazars. Accordingly, we find no basis on which to disturb the trial court's order overruling Mazars' preliminary objections seeking to compel arbitration.

Appeals Docketed at 1225 EDA 2024 and 767 EDA 2024 Consolidated *Sua Sponte*. Order denying Jacob Singer's petition for emergency preliminary

injunction in 1225 EDA 2024 affirmed. Order overruling preliminary objections to compel arbitration in 767 EDA 2024 affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/20/2024